United States Court of Appeals,

Fifth Circuit.

No. 91–8255.

In the Matter of Wayne M. LAYMON, Debtor.

Theron BRADFORD, Trustee, Appellant,

v.

James CROZIER, Trustee, Appellee.

April 8, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before THORNBERRY, GARWOOD, and DAVIS, Circuit Judges.

THORNBERRY, Circuit Judge:

The appellant, an oversecured creditor, appeals from the district court's affirmance of the bankruptcy court's decision awarding post-petition interest on appellant's oversecured claim at the federal judgment interest rate rather than at the contractual default rate. Because we find that the district court and bankruptcy court incorrectly interpreted the Supreme Court's opinion in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), and incorrectly applied the federal judgment interest rate as the applicable rate of interest under § 506(b) of the Bankruptcy Code, we reverse and remand to the district court.

I. Background

In August 1983, Wayne Laymon, the debtor, executed a promissory note in the original principal amount of $669,900.00 to Theron Bradford, Trustee. The Note provided for annual payments in the amount of $66,990 for four years to cover accrued interest and to reduce the principal, and a balloon payment due on August 24, 1988. Under the provisions of the Note, all unmatured amounts accrued interest at the rate of 10%, while all matured unpaid amounts accrued interest at the highest rate permitted by law (the default rate), which the parties have stipulated to be 18%.

The debtor failed to make the first payment due under the Note on August 18, 1984, and filed a voluntary petition under Chapter 11 on September 4, 1984. In 1986 he made adequate protection payments to Bradford totalling $311,165, and the Trustee (Crozier) thereafter made additional adequate protection payments totalling $315,000. The Note matured by its terms on August 24, 1988. On May 8, 1989, Bradford filed a motion requesting payment of interest, costs, and fees under section 506(b) of the Bankruptcy Code, claiming that he was entitled to interest at the 18% penalty rate. After a hearing on stipulated facts, the bankruptcy court denied Bradford's request for penalty interest, but allowed post-petition interest on the claim at the pre-default contract rate of 10%.

Bradford filed a motion for reconsideration, and the Trustee filed a cross-motion for reconsideration. After another hearing, the court vacated its prior opinion and held that the federal judgment interest rate of 28 U.S.C. § 1961 provided the proper rate of interest at which post-petition interest accrued. *In re Laymon,* 117 B.R. 856, 864 (Bankr.W.D.Tex.1990). Bradford appealed the bankruptcy court's holding to the federal district court. The district court affirmed the opinion of the bankruptcy court. Bradford now brings this appeal.

## II. Analysis

A. The Standard of Review

The parties contest the standard of review to be applied by this court. Bradford submits that this appeal presents solely a question of law reviewable *de novo.* The Trustee, on the other hand, argues that awards and denials of post-petition interest are equitable determinations, reviewed for abuse of discretion.

The district court simply affirmed the bankruptcy court's order based on the reasoning in the bankruptcy court's opinion. It is clear that the foundation of the bankruptcy court's decision is its interpretation of the Supreme Court's opinion in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S.

235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The bankruptcy court's interpretation of *Ron Pair* constitutes a legal question which we review *de novo. See In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986) (citing *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1308 (5th Cir.1985)).

B. The Interpretation of the *Ron Pair* Decision

After a hearing on the motions for reconsideration, the bankruptcy court decided that the contract rate was not the correct rate of interest to be applied under § 506(b) and that the federal judgment interest rate was the proper rate to apply. Based on its interpretation of the Supreme Court's opinion in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the bankruptcy court concluded that the issue of interest was completely divorced from the existence of an agreement, and therefore, the agreement did not provide the applicable rate of interest. We find that the bankruptcy court incorrectly interpreted *Ron Pair.*

In *Ron Pair,* the Supreme Court held that § 506(b) applied to all oversecured claims, consensual and nonconsensual. The decision resolved a split in authority over whether § 506(b) applied only to claims arising under an agreement, or whether it applied to all oversecured claims, arising from consensual agreements or nonconsensual statutory liens. 3 COLLIER ON BANKRUPTCY ¶ 506.05 at 506–42. Section 506(b) provides that:

> [t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). In *Ron Pair,* the Supreme Court analyzed the plain meaning of § 506(b), finding that the phrase "interest on such claim" is not modified by the clause "provided for in the agreement," because " "interest on such claim' is set aside by commas, and separate from the reference to fees, costs, and charges by the conjunctive words "and any.' " *Ron Pair,* 109 S.Ct. at 1030. As a result,

"interest on such claim" refers both to consensual and nonconsensual claims. *Id.* When interpreting the *Ron Pair* decision, the bankruptcy court concluded that "[g]iving full effect to the Supreme Court's interpretation of that comma leads ineluctably to the conclusion that the entire issue of interest is completely divorced from either the existence or the content of any underlying agreement." *In re Laymon,* 117 B.R. 856, 858–59 (Bankr.W.D.Tex.1990). This conclusion is erroneous. The *Ron Pair* decision does not address the issue of what rate of interest is applied under § 506(b). There is nothing in the *Ron Pair* decision that leads us to believe that the Supreme Court intended to speak to the *rate* of interest under § 506(b).

C. What Rate of Interest Applies Under § 506(b)?

Even though we hold that *Ron Pair* does not affect the rate of interest applied in § 506(b), we still must determine what rate of interest applies in this case. The Supreme Court "has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992). The legislative history of § 506(b) does not refer to a rate of interest. 3 COLLIER ON BANKRUPTCY ¶ 506.05, at 506–47. The language of § 506(b) does not refer to a rate of interest. *See* 11 U.S.C. § 506(b). Therefore, we must conclude that Congress did not intend for § 506(b) of the Code to effect a major change in pre-Code practice concerning the rate of interest applied under the section. *See Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) ("We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.").

Prior to the enactment of the Bankruptcy Code, courts applied a general rule that the accrual of interest on claims against the bankrupt estate was suspended from the date the petition was filed.

*See Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). Yet, most courts recognized three exceptions to this rule. *See United States v. Bass,* 271 F.2d 129, 130 (9th Cir.1959). One of these exceptions was that post-petition interest was allowed when the security for a claim was worth more than the sum of principal and interest due, i.e. when the creditor was oversecured. *See In re Macomb Trailer Coach,* 200 F.2d 611, 613 (6th Cir.1953). When the Bankruptcy Code was enacted, § 506(b) codified pre-Code law regarding this exception. *In re United Merchants and Manufacturers, Inc.,* 674 F.2d 134, 138 (2d Cir.1982). Since § 506(b) does not speak to the rate of interest allowed under the section, we turn to pre-Code case law for the answer.

Prior to the enactment of the Code, the majority of courts utilized the contract rate of interest when allowing an oversecured creditor to collect post-petition interest pursuant to § 506(b). 3 COLLIER ON BANKRUPTCY ¶ 506.05, at 506–46. Therefore, we hold that when an oversecured creditor's claim arises from a contract, the contract provides the rate of post-petition interest. In this case, however, the contract included a 10% pre-default rate and an 18% default rate. Bradford claims that he is entitled to the 18% default rate. Under pre-Code law, courts were "not required in all cases to apply a contractual default rate of interest in determining the amount of an "allowed secured claim' within the meaning of [§ 506(b) ]." *In re Sheppley & Co.,* 62 B.R. 271 (Bankr.N.D.Iowa 1986) (discussing the following pre-Code cases: *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *American Surety Co. v. Sampsell,* 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663 (1946); *U.S. Trust Co., v. Zelle,* 191 F.2d 822 (8th Cir.1951), *cert. denied* 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 703 (1952); *In re Black Ranches, Inc.,* 362 F.2d 8 (8th Cir.), *cert. denied sub nom., Black v. Strand,* 385 U.S. 990, 87 S.Ct. 595, 17 L.Ed.2d 450 (1966); *Ruskin v. Griffiths,* 269 F.2d 827 (2d Cir.1959), *cert. denied,* 361 U.S. 947, 88 S.Ct. 402, 4 L.Ed.2d 381 (1960)). Most courts took a flexible approach, recognizing situations in which "the higher rate would produce an inequitable or unconscionable result, so as to require disallowance thereof." *Sheppley,* 62 B.R. at 277. Accordingly, whether the 18% default rate, rather than the 10% pre-default rate,

should apply in this case must be decided by examining the equities involved in this bankruptcy proceeding.

Therefore, we REVERSE and REMAND to the district court for further proceedings consistent with this opinion.