**In the Matter of GREENSBORO LUMBER COMPANY, Debtor.**

**Bankruptcy No. 90–30905 RFH.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

March 29, 1995.

Frank A. Lightmas, Jr., Atlanta, GA, for debtor.

Ann Reid, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Lillian H. Lockary, Asst. U.S. Atty., Macon, GA, for U.S.

Ernest V. Harris, Chapter 7 Trustee, Athens, GA.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Greensboro Lumber Company, Debtor, filed on December 6, 1993, its "Debtor's Objection to the Claim of the IRS, Debtor's Motion to Determine Amount of Claim Held by the IRS, Debtor's Motion to Subordinate Certain Claims of the IRS, and Debtor's Motion for Refund from the IRS for Overpayment Made to the IRS in Connection with Its Secured Claim." The United States of America, on behalf of the Internal Revenue Service, ("IRS") filed its response on March 2, 1994. A hearing on Debtor's objection was held on March 15, 1994. The Court, having considered the arguments and briefs of counsel, now publishes this memorandum opinion.

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on November 5, 1990. Debtor continued to operate its lumber business for a number of months after its bank-

ruptcy filing. Debtor later liquidated most of its assets and will not reorganize as a going concern. The Court entered an order on May 26, 1994, converting this Chapter 11 case to a Chapter 7 case. Ernest V. Harris was appointed Chapter 7 Trustee. The Court entered an order on November 18, 1994, which substituted Mr. Harris as the party in interest in place of Debtor.[1]

The IRS filed timely proofs of claim in Debtor's bankruptcy case. The IRS asserted a secured claim, an unsecured priority claim, and an administrative expense claim. Debtor filed an objection to the claims. The objection to the unsecured priority claim was resolved at the hearing on March 15, 1994. The Court now turns to consider the remaining objections.

### The Secured Claim

The IRS filed an amended proof of claim on February 22, 1993. The claim is secured by a federal tax lien. The value of the property owned by Debtor, subject to the tax lien, exceeds the obligation owed to the IRS. Thus, the IRS's claim is oversecured.[2] The IRS is entitled to include postpetition interest in determining the amount of its allowed secured claim. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Postpetition interest accrues from the date of the bankruptcy filing until payment of the secured claim or until the effective date of the reorganization plan. *Rake v. Wade*, — U.S. —, —, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993). Postpetition interest actually becomes part of the secured claim. *Warehouse Home Furnishings Distributors, Inc. v. Gladdin (In re Gladdin)*, 107 B.R. 803, 806 (Bankr.M.D.Ga.1989).

The IRS's secured claim includes $49,500.31 for prepetition taxes, penalties, and interest. Trustee does not object to this part of the claim. The IRS's secured claim also includes $14,690.77 in postpetition interest. In order to stop the accrual of postpetition interest, Debtor issued a check dated November 12, 1993, in the amount of $64,191.08.[3] The check was payment in full of the amount demanded by the IRS. Trustee contends the IRS charged excessive postpetition interest and now seeks a refund of $6,309.63. Trustee concedes that the IRS was entitled to some postpetition interest, but disagrees with the rate of interest charged by the IRS.

The IRS contends that Trustee has not properly filed a request for a tax refund and that this Court lacks jurisdiction to award a refund.[4] In the Court's view, the real issue is the amount of postpetition interest the IRS is entitled to receive. If the Court determines that Debtor overpaid its taxes, Trustee then can properly request a refund.

Section 506(b) of the Bankruptcy Code provides:

**§ 506. Determination of secured status**

. . . .

**(b)** To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, *interest on such claim,* and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C.A. § 506(b) (West 1993) (emphasis added).

Neither the language of section 506(b), its legislative history, nor *Ron Pair* resolves the question of the allowable rate of postpetition interest on an oversecured claim. *Bradford v. Crozier (In re Laymon),* 958 F.2d 72, 74

---

1. Although Debtor filed the objection and supporting brief in this contested matter, the Court will refer to Trustee as the objecting party. Trustee has adopted the arguments of Debtor.

2. 11 U.S.C.A. § 506 (West 1993).

3. The IRS was entitled to postpetition interest from November 5, 1990, until November 12, 1993.

4. *See* 11 U.S.C.A. § 505(a)(2) (West 1993); 3 *Collier on Bankruptcy* ¶ 505.04[2] (15th ed. 1994) (bankruptcy court can determine debtor's right to tax refund only if a proper request for refund has been made).

(5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992).

"[The] right to postpetition interest under § 506(b) is 'unqualified' and exists regardless of whether the agreement giving rise to the claim provides for interest." *Rake v. Wade*, —— U.S. at ——, 113 S.Ct. at 2190.

Trustee contends the IRS should receive postpetition interest at the prime rate. Trustee contends the prime rate, during the relevant period, varied from four percent to eight percent.

The IRS contends it should receive postpetition interest at the statutory rate provided in IRC §§ 6621 and 6622. The statutory rate is the "Federal short-term rate" plus three percent. The statutory rate, during the relevant period, varied from seven percent to eleven percent.

The Internal Revenue Code provides:

§ 6601. Interest on underpayment, nonpayment, or extensions of time for payment of, tax

(a) General rule.—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

. . . .

§ 6611. Interest on overpayments

(a) Rate.—Interest shall be allowed and paid upon any *overpayment* in respect of any internal revenue tax at the overpayment rate established under section 6621.

. . . .

§ 6621. Determination of rate of interest

(a) General rule.—

(1) Overpayment rate.—The *overpayment* rate established under this section shall be the sum of—

(A) the Federal short-term rate determined under subsection (b), plus

(B) 2 percentage points.

(2) Underpayment rate.—The *underpayment* rate established under this section shall be the sum of—

(A) the Federal short-term rate determined under subsection (b), plus

(B) 3 percentage points.

. . . .

§ 6622. Interest compounded daily

(a) General rule.—In computing the amount of any interest required to be paid under this title . . ., by the Secretary or by the taxpayer, or any other amount determined by reference to such amount of interest, such interest and such amount shall be compounded daily.

IRC §§ 6601(a), 6611(a), 6621(a), 6622(a) (emphasis added).

Under the Internal Revenue Code, a taxpayer who owes taxes must pay interest at the Federal short-term rate plus three percent, compounded daily. A taxpayer who overpaid his taxes will receive interest on his refund at the Federal short-term rate plus two percent, compounded daily.[5] Thus, the interest rate applicable to an underpayment and an overpayment varies by only one percentage point.

Most secured claims in bankruptcy arise either from a security agreement signed by the debtor or from a nonconsensual lien. Most courts hold that postpetition interest on secured claims should be allowed at the rate provided for in the security agreement even though the rate exceeds the prevailing market interest rate. *Bradford v. Crozier (In re Laymon)*, 958 F.2d 72, 75 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992); *Bank of Honolulu v. Anderson (In re Anderson)*, 833 F.2d 834, 836 (9th Cir.1987); *Warehouse Home Furnishings Distributors, Inc. v. Gladdin (In re Gladdin)*, 107 B.R. 803 (Bankr.M.D.Ga.1989) (oversecured creditor was entitled to postpetition interest at the contract rate of twenty-three percent per annum).

*Collier on Bankruptcy* states: "Nonetheless, postpetition interest should be computed at the rate provided in the agreement *or*

---

5. The taxpayer will not receive interest if a refund is made within 45 days of the overpayment.

IRC § 6611(e); *Godfrey v. United States*, 997 F.2d 335, 336 (7th Cir.1993).

*law under which the claim arose*, the so-called 'contract rate' of interest." 3 *Collier on Bankruptcy* ¶ 506.05, p. 506–46 (15th ed. 1994) (emphasis added).

The IRS's secured claim arises from a nonconsensual lien rather than from a security agreement. A number of courts have held that the government is entitled to postpetition interest at the statutory rate. In *In re Lapiana*,[6] the IRS filed federal tax liens against the debtor's commercial property. The IRS used the interest rate provided in IRC §§ 1274(d) and 6621 to determine its section 506(b) interest. The Seventh Circuit Court of Appeals noted that "[t]he Treasury bill rate plus three percent is generous, but not princely. . . . " 909 F.2d at 224.

In *Galveston Independent School District v. Heartland Federal Savings and Loan Association*,[7] the parties disputed the amount of interest and penalties due on delinquent property taxes assessed against an apartment complex. Galveston demanded payment, as permitted by statute, of the delinquent taxes, statutory interest and penalties of twenty-five percent, and collection costs. Heartland considered the charges excessive and offered to pay the delinquent taxes plus postpetition interest at the "market rate" of six percent. Heartland contended that section 506(b) allowed interest only at either the federal judgment rate or the market rate, rather than at the statutory rate. The district court held that Galveston was entitled to the statutory rate and stated:

> Speculation aside, in *Laymon* the Fifth Circuit held that § 506(b) allows an oversecured contract creditor its contractual rate of interest, rather than (as the Bankruptcy Court held) the federal judgment interest rate. While not directly on point, this case suggests—and this Court so holds—that nonconsensual oversecured creditors also receive the rate of interest dictated by the statutes under which their liens arise, provided the charge can be reasonably characterized as true interest rather than as a penalty. *See In re Davison*, 106 B.R. 1021, 1022 (Bankr.D.Neb.1989) (allowing County its 14% per annum statutory interest rate on delinquent tax lien); *In re Krump*, 89 B.R. 821, 825 (Bankr.D.S.D. 1988) (awarding statutory rate of interest on tax lien); *In re Charter Co.*, 63 B.R. 568, 571 (Bankr.M.D.Fla.1986) (allowing holder of oversecured mechanic's lien the rate of interest specified by Texas statute); *cf. Meilink [v. Unemployment Reserves Commission]*, 314 U.S. 564, 62 S.Ct. 389 [86 L.Ed. 458 (1942) ] (allowing state fund to recover statutory 12% per annum interest on delinquent contributions from debtor, as this was not so high as to constitute an un-allowed penalty).

> This final proviso, however, raises a question which, although not briefed by the parties, is necessary to the resolution of this case. That is: Is the charge denominated "interest" in the Texas Tax Code "interest eo nomine"—interest imposed as compensation for the detention of money—or simply another penalty for delinquency?

159 B.R. at 204.

Trustee contends that IRC § 6621 interest is punitive rather than "true interest." The Court is not persuaded by this contention. "[The IRC § 6621] interest rate paid by taxpayers on delinquent tax claims is designed to eliminate the incentive for taxpayers to 'borrow' from the IRS by delaying the payment of their taxes." *United States v. Neal Pharmacal Co.*, 789 F.2d 1283, 1287 (8th Cir.1986). "The government [, however,] also must pay interest on overpayments of taxes at the section 6621 rate." 789 F.2d at 1287 n. 10. Thus, the Internal Revenue Code provides very similar treatment for both the IRS and a taxpayer.

Trustee argues that "Courts considering the analogous issue of what the appropriate rate of interest would be to satisfy the [present value] standards of § 1129 of the Code have further rejected IRS arguments that the only appropriate rate of interest is the statutory rate provided for under § 6621." Debtor's Brief pp. 4–5.

Trustee relies upon *United States v. Southern States Motor Inns, Inc. (In re*

---

6. 909 F.2d 221 (7th Cir.1990).

7. 159 B.R. 198 (S.D.Texas 1993).

*Southern States Motor Inns, Inc.).*[8] In that case, the Eleventh Circuit Court of Appeals held that the prevailing market rate of interest must be considered in determining the interest on deferred tax payments pursuant to 11 U.S.C.A. § 1129(a)(9)(C). The circuit court noted that the IRC § 6621 rate may be relevant, but not exclusive, in determining the prevailing market rate.

"The § 6621 rate reflects tax objectives, not those of bankruptcy law.... But the § 1129(a)(9)(C) rate is not the § 6621 rate as a matter of law." *In re Camino Real Landscape Maintenance Contractors, Inc.,* 818 F.2d 1503, 1507 (9th Cir.1987).

■ The Court is persuaded that the IRS is entitled to the statutory rate of interest as provided in IRC § 6621.

Trustee also contends the IRS is not entitled to compound interest on its oversecured claim.

In *RJR Nabisco, Inc. v. United States,*[9] the Eleventh Circuit Court of Appeals stated:

Prior to the 1982 changes in the Internal Revenue Code ("Code"), simple interest was assessed on any tax deficiency or tax overpayment. The accrual of compound interest was expressly prohibited by the Code. Section 344 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") repealed this prohibition and provided that all interest assessed on tax deficiencies and overpayments would be compounded. The effective-date provision of Section 344 stated that the changes discussed within the text would "apply to interest accruing after December 31, 1982." ...

. . . .

Simple interest is calculated only on an outstanding principal debt. Compound interest, on the other hand, is calculated on an outstanding principal amount *as well as* any interest owed but unpaid at the date of the calculation. When compound interest is calculated, the only number examined is the entire debt owed by the taxpayer; what that debt consists of is irrelevant. In contrast, under a simple-interest regime, the only relevant number for purposes of calculating interest owed is the outstanding principal amount, regardless of how far interest payments are in arrears.

. . . .

Finally, Congress changed the Internal Revenue Code because the former system undercompensated the creditor, whether it was the government in the case of a tax deficiency or the taxpayer in the case of an overpayment. S.Rep. 494, Vol. 1, 97th Cong., 2d Sess. 305 (1982 U.S.Code Cong. & Admin.News 781, 1046). Congress determined that the failure to tax accumulated but unpaid interest placed an "unreasonable burden" on the IRS. *Id.*

955 F.2d at 1458–65 (emphasis in original).

The IRS relies on *In re Beck.*[10] In that case, the Chapter 7 debtor's assets were sufficient to pay in full all claims, as well as interest on the claims. The bankruptcy court stated:

C. Interest on administrative claims is clearly recognized and permitted by § 726(a)(5) since claims of the kind specified at § 507 are entitled to interest and administrative claims are included in § 507.

D. In the case at bar, the Internal Revenue Service is benefitted by a specific statute at 26 U.S.C. § 6621(a)(2) which establishes the rate as the federal short term rate determined pursuant to subsection (b) of § 6621 plus 3 percentage points. This would appear to be the appropriate rate under the standard established by this Court for the claims of the Internal Revenue Service, including for the calculation of interest upon interest which has yet to be paid. This would include interest until the date of full payment on February 8, 1991 by the Trustee, as well as interest on the interest due the claim.

128 B.R. at 572–73.

■ The Court notes that the Internal Revenue Code provides that both the IRS

---

**8.** 709 F.2d 647 (11th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

**9.** 955 F.2d 1457 (11th Cir.1992).

**10.** 128 B.R. 571 (Bankr.E.D.Okla.1991).

and the taxpayer are entitled to compound interest. The Court is persuaded that interest on the IRS's secured claim should be compounded daily.

### The Administrative Expense Claim

Debtor continued to operate its lumber business for a number of months after its bankruptcy filing. Debtor failed to pay certain employment related taxes. The IRS filed an amended administrative expense claim on September 13, 1993, for postpetition taxes in the amount of $92,926.99, accrued interest in the amount of $21,263.83, and accrued penalties in the amount of $41,606.26. Debtor made two payments on the administrative expenses.[11]

Trustee contends the IRS is not entitled to statutory interest on its administrative expense claim. Trustee cites no additional authority for this position, but relies upon his arguments previously asserted under *The Secured Claim.*

In *United States v. Cranshaw (In re Allied Mechanical Services, Inc.),*[12] the Chapter 11 debtor incurred postpetition federal tax liabilities. The Eleventh Circuit Court of Appeals held that interest that accrued on the postpetition tax liabilities was entitled to administrative expense priority when the Chapter 11 case was converted to a Chapter 7 liquidation. The circuit court noted that "interest on the postpetition tax liability [is] treated as part of the underlying tax liability itself.... It would be inconsistent to give priority to a penalty associated with a tax liability but not give priority to the interest on the same tax liability." 885 F.2d at 839.

■ The Court is persuaded that the IRS is entitled to interest on its administrative expense claim at the rate provided in IRC § 6621.

Finally, Trustee concedes the IRS is entitled to postpetition penalties on its administrative expense claim. Trustee contends, however, the penalties are not entitled to administrative expense priority. Trustee contends the penalties should be subordinated to the claims of general unsecured creditors.

Section 510(c)(1) of the Bankruptcy Code [13] provides:

### § 510. Subordination

. . . .

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of any allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

11 U.S.C.A. § 510(c)(1) (West 1993).

"The bankruptcy court may not use its equitable power against the dictate of § 502 or any other section of the Bankruptcy Code. On the contrary, this equitable power 'must and can only be exercised within the confines of the Bankruptcy Code.' " *United States v. Sanford (In re Sanford ),* 979 F.2d 1511, 1514 (11th Cir.1992).

In *Allied Eastern States Maintenance Corp. v. Miller (In re Lemco Gypsum, Inc.),*[14] the Eleventh Circuit Court of Appeals stated:

Title 11 U.S.C.A. § 510(c) adopts the long-standing judicially developed doctrine of equitable subordination under which a bankruptcy court has power to subordinate claims against the debtor's estate to claims it finds ethically superior under the circumstances. Proper exercise of the equitable subordination power can take place only where three elements are established:

(1) The claimant must have engaged in some type of inequitable conduct,

(2) The misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant,

---

**11.** The IRS filed another amended expense claim on July 20, 1994, which reduced its total claim to $104,362.04. This reduction does not affect the Court's decision.

**12.** 885 F.2d 837 (11th Cir.1989).

**13.** 11 U.S.C.A. § 510(c)(1) (West 1993).

**14.** 911 F.2d 1553 (11th Cir.1990).

(3) Subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

The inequitable conduct need not be related to the acquisition or assertion of the claim. The claim can be subordinated only to the extent necessary to offset the harm suffered by the bankrupt and its creditors on account of that conduct.

911 F.2d at 1556.

In *Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.)*,[15] the Eleventh Circuit stated:

The burden and sufficiency of proof required [in equitable subordination] are not uniform in all cases. Where the claimant is an insider or a fiduciary, the trustee bears the burden of presenting material evidence of unfair conduct. Once the trustee meets his burden, the claimant then must prove the fairness of his transactions with the debtor or his claim will be subordinated. If the claimant is not an insider or fiduciary, however, the trustee must prove more egregious conduct such as fraud, spoilation or overreaching, and prove it with particularity.

799 F.2d at 731.

■ Trustee has presented no evidence that the IRS engaged in any inequitable conduct. The Court is persuaded that equitable subordination is not appropriate in the case at bar. The Court is persuaded that Trustee's objection to the claims of the IRS must be overruled.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that "Debtor's Objection to the Claim of the IRS, Debtor's Motion to Determine Amount of Claim Held by the IRS, Debtor's Motion to Subordinate Certain Claims of the IRS, and Debtor's Motion for Refund from the IRS for Overpayment Made to the IRS in Connection with Its Secured Claim" filed on the 6th day of December, 1993, by Greensboro Lumber Company, Debtor, hereby is overruled.

**15.** 799 F.2d 726 (11th Cir.1986).