1. The Court's original Opinion inadvertently referred to defendant TCF National Bank as TFC National Bank. This Amended Opinion corrects that error.

This is a final and appealable Judgment. There is no just reason for delay.

**In re HI TECH FLEET SERVICE, INC., Debtor.**

**Charles L. Wells, III, Trustee, Plaintiff,**

**v.**

**TCF National Bank,[1] Defendant.**

Bankruptcy No. 03–70655.
Adversary No. 05–5313.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

March 9, 2006.

Richard A. Page, Allen Park, MI, for Debtor.

*AMENDED OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT*

MARCI B. McIVOR, Bankruptcy Judge.

This matter came before the Court on the Plaintiff/Trustee Charles Wells III's Motion for Summary Judgment. Plaintiff requests summary judgment on a two-count Complaint seeking: (1) a determination of the amount, validity and extent of creditor TCF National Bank's Claim, and (2) avoidance of an allegedly unauthorized post-petition transfer of funds to creditor TCF National Bank. At the conclusion of a hearing held on February 7, 2006, the Court took Plaintiff's Motion under advisement. Based on the pleadings and the arguments presented at the hearing, the Court denies Plaintiff's Motion for Summary Judgment and dismisses the Complaint.

### Background

The facts underlying the post-petition payment of funds to creditor TCF are undisputed. Debtor High Tech Fleet Service, Inc. filed a voluntary Chapter 11 bankruptcy petition on November 12, 2004. Debtor's biggest asset at the time of the filing was a building located at 25086 Brest Road, Taylor Michigan. On Schedule A, the building was valued at $1,400,000 with an outstanding mortgages of $954,688. The mortgages were held by defendant TCF National Bank. On April 12, 2004, TCF filed a secured claim against the estate in the amount of $919,018,87.

On May 7, 2004, debtor Hi Tech Fleet filed a Motion for Sale of Real Estate seeking to sell the Brest Road property under 11 U.S.C. § 363(f). In that Motion, Debtor listed lienholders whose property rights would be affected by the sale and the amount owed on the lien. Those lien holders were: TCF National Bank ($980,-000), Contractors Fence Service ($10,000),

and The Siciliano Law Firm ($100,000).[2] The Proof of Service filed with the Motion indicates that it was served on all parties listed on the bankruptcy matrix. On May 14, 2004, the Court entered an Order authorizing a sale and providing for application of the sale proceeds. The order stated in part:

> IT IS FURTHER ORDERED that Debtor, on or before April 30, 2004, shall file with the Court and serve all necessary parties with a copy and notice, an Application to the Court for Authority to sell the Property pursuant to 11 USC § 363 to one of the two prospective purchasers of the Property, Gordon C. Mobley or F. Richard Tyner on behalf of an entity to be formed, or such other purchaser as may present an offer to purchase acceptable to Debtor prior to the hearing date set forth below ("Purchaser"), free and clear of liens, claims, encumbrances, or other interests and to transfer liens, claims, encumbrances, and other interests to the proceeds of said sale, and approve broker's fees to be paid at Closing, all in accordance with all applicable statutes and Bankruptcy Rules, and as is otherwise provided in this Order, and that a hearing on such Application before the Court is set for June 29, 2004 at 10:30 a.m.
>
> IT IS FURTHER ORDERED that liens, claims, and encumbrances in the Property shall be transferred to the proceeds of the sale to a Purchaser *after payment of TCF National Bank's indebtedness in full,* the lien allowed secured claim of Contractors Fence Service, Inc., in the amount of $10,500.00 together with reasonable attorney fees and the usual expenses of sale of the Property, including broker's fees as hereafter set forth in this Order, with

the same validity as to the proceeds as they had with respect to the Property, and further Order of the Court.

> . . .
>
> IT IS FURTHER ORDERED that the provisions of this Order shall be self executing and neither the Debtor nor any Purchaser of the Property shall be required to execute or file discharges, deeds, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the foregoing provisions hereof; provided however that this paragraph shall not excuse either party from performing any and all of their respective obligations under the transaction(s) contemplated in the Application or this Order, or from executing and delivering such documents as are reasonably requested by the other to effectuate the transaction(s) contemplated in the Application or this Order.

(Emphasis added). The Order was stipulated to by counsel for the Debtor, counsel for TCF Bank, counsel for the United States Trustee, and counsel for Contract Fence Service.

On June 24, 2004, Debtor submitted Gordon Mobley's Offer to Purchase to the Court. On June 29, 2004, the Court held a hearing on Debtor's Motion to Approve Sale to Gordon Mobley and granted Debtor's Motion on the record. A written Order granting the Motion was entered on July 15, 2004. No appeal or motion for reconsideration was filed after the Order was entered. The sale closed on July 27, 2004. According to the sale closing statement, TCF received $990,226.84 from the sale proceeds. That amount included interest, attorney fees "and other charges incurred by the Bank in order to enforce its mortgage lien on the property." (TCF Brief at 2).

---

**2.** The lien of the Siciliano Law Firm was disputed by the Debtor. The law firm received no distribution from the sale of the property.

On August 24, 2004, at the request of Debtor, the Court entered an Order converting Debtor's Chapter 11 proceeding to a Chapter 7 proceeding. Charles Wells, III was appointed the Chapter 7 trustee on September 8, 2004.

On June 10, 2005, almost one year after the sale, the Trustee filed a Complaint against TCF seeking to recover some of the money paid to TCF from the sale of the Brest Road property. Specifically, the Trustee asserts that TCF"s post-sale payoff of $990,226.84 wrongly included interest, fees, costs and other charges totaling $117,555.95. Count I of the Complaint seeks a finding by the Court that "TCF National Bank's secured claim prior to the July 27, 2004 [closing] did not exceed $872,650.89 and order the refund of the overpayment of $117,555.95 pursuant to 11 U.S.C. § 542." Count II asserts that the "overpayment of interest and the default interest, fees, costs and charges paid to TCF" constitute post-petition transfers of property not authorized by the Court or the Code and avoidable pursuant to 11 U.S.C. § 549(a)(1) and (a)(2)(B).

The Trustee filed the present Motion for Summary Judgment on December 28, 2005. In its Response Brief, TCF asserts that its $990,226.84 payoff was made "in full compliance with and under the authority of this Court's Orders." The Court held a hearing on Plaintiff's Motion for Summary Judgment on February 7, 2006.

### *Jurisdiction*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

### *Standard For Summary Judgment and Dismissal under Fed.R.Civ.P. 12(b)(6)*

Fed.R.Civ.P. 56(c) for summary judgment is incorporated into Fed. R. Bankr.P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548. A "genuine" issue is one where no reasonable factfinder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.1998) (citing *Anderson*, 447 U.S. at 248, 100 S.Ct. 2124). Once the movant meets this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted." *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149–50 (6th Cir.1995) (internal quotation marks and citation omitted).

The Court may enter summary judgment in the absence of a cross-motion, if otherwise appropriate. *K.E. Resources, Ltd. v.BMO Financial Inc. (In re Century*

*Offshore Mgt. Corp.)*, 119 F.3d 409, 412 (6th Cir.1997); *See also, Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ledford v. Tiedge (In re Sams),* 106 B.R. 485 (Bankr. S.D.Ohio 1989); *Dickeson v. Quarberg,* 844 F.2d 1435, 1444 n. 8 (10th Cir.1988).

The Court may also dismiss a complaint for failure to state a claim on which relief can be granted under Fed.R.Civ.P. 12(b)(6). A motion to dismiss a complaint under Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the complaint rather than the merits of the case. *See* 10 Wright, Miller and Kane, *Federal Practice and Procedure: Civil 2d* § 2713 at 2221 (West 1998). In determining a motion to dismiss under Federal Rule 12(b)(6), the court must accept all factual allegations as true and construe all inferences from those allegations "in a light most favorable for the plaintiff." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). "However, the court need not accept as true a legal conclusion couched as a factual allegation." *Soli-Tech, Inc. v. Halliburton Co.,* No. 91–CV–10232–BC, 1993 WL 315358 at *3 (E.D.Mich. Jan.26, 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mayer,* 988 F.2d at 638, *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Analysis

The Trustee argues that as a matter of law, TCF Bank had an obligation to seek approval from the Court before receiving payment of interest and attorney fees incurred in collecting on the debt owed to TCF. The Trustee's argument is framed around the issue of whether amounts received by TCF Bank are permissible under 11 U.S.C. § 506(b). The Court agrees with defendant TCF that this question cannot be addressed until the Court addresses the threshold issue of whether a Chapter 7 trustee can challenge a final order entered prior to the conversion of the case. This issue appears to be one of first impression in the Sixth Circuit. However, on similar facts, the Seventh Circuit has ruled that "[s]ale orders are final, appealable orders" and "once the time for appeal from a bankruptcy court's sale order has expired, res judicata precludes a party to the sale proceeding from attacking the sale order by way of a new lawsuit." *Boyer v. Gildea,* 2005 WL 2648673 (N.D.Ind.2005), *quoting In re Met–L–Wood Corp.,* 861 F.2d 1012, 1016 (7th Cir.1988). "The important policy of favoring the finality of bankruptcy court orders approving the sales of debtor assets requires that bankruptcy orders be final judgments for res judicata purposes." *In re Met–L–Wood Corp.,* 861 F.2d at 1017–1018.[3]

In the *Met–L–Wood* case, a bankruptcy judge approved the auction sale of a Chapter 11 debtor's assets under 11 U.S.C. § 363. After the case converted to a Chapter 7 proceeding, the Chapter 7 trustee sued the auction bidders, the debtor,

---

3. The four elements of res judicata are (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 880 (6th Cir.1997). According to the Sixth Circuit Court of Appeals, the doctrine of res judicata "promote[s] the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 480 (6th Cir.1992).

and others involved in the sale under RICO and state law for fraudulently rigging the auction. The trustee also filed a motion under Rule 60(b) to vacate the judgment approving the sale. The district court held that the trustee's fraud claims were barred by res judicata and dismissed the Rule 60(b) motion because it was not timely filed. *Met–L–Wood,* 861 F.2d at 1014–16. The trustee appealed and the appellate court held that the bankruptcy court's order approving the auction was an appealable order and a final judgment for res judicata purposes. In discussing the *Met–L–Wood* case, the *Boyer* court explained:

> Even though the trustee was not seeking to set aside the sale order, the fraud claims under RICO and state law were seen as a collateral attack on the sale order and were barred. As the [*Met–L–Wood*] court stated, 'by seeking heavy damages from [the defendants], the suit is a thinly disguised collateral attack on the judgment confirming the sale. This may be done only by the route provided for collateral attacks on judgments.' [*Met–L–Wood*] at 1018. Also, the [*Met–L–Wood*] court held that the sale order was binding not only on the creditors represented at the sale hearing, but also on the creditors who were not represented and had insufficient notice of the sale. The court reasoned that a proceeding under § 363 is an *in rem* proceeding and the transfer of property rights is binding even on nonparties to the proceeding. [*Met–L–Wood*] at 1017.

*Boyer* at *4.

■ Under Fed. Bankr.R. 8002, a party has 10 days to appeal entry of a judgment, order or decree. In the present case, every party with an alleged interest in the property as well as every creditor listed on the matrix was given notice of the Motion to sell the Brest Road property. No party

appealed the Order, requested reconsideration of the Order or requested an accounting for the transaction. Debtor's Motion itself stated that TCF was owed approximately $980,000, thus placing all interested parties on notice that the estimated amount being sought by TCF, the first lien holder, was substantially higher than the $919,000 claim originally filed by TCF.

The Trustee in the present case assumes that he has the right to challenge the sale order, presumably because the Trustee was not appointed until after the case was converted to Chapter 7 and thus had no opportunity to challenge TCF's payoff. The Court disagrees. The Chapter 7 trustee represents the interests of creditors, and the Trustee cannot raise issues which could have been raised by creditors in the Chapter 11 sale process. As the court said in *Met–L–Wood,*

> [t]he trustee in bankruptcy is the creditors' representative... and therefore, a judgment for or against the trustee is res judicata in a suit on the same claim by a creditor, provided no conflict of interest made the trustee's representation inadequate... The applicability of res judicata is even clearer in the converse situation ... where the first suit is by the creditor and the second by the trustee. What the principal has surrendered, the agent cannot claim.

*Met–L–Wood,* 861 F.2d at 1017 (citations omitted). While the facts of *Met–L–Wood* are not on all fours with the case at bar, the principle applies: all parties with a vested interest in challenging the amount of proceeds paid to TCF from the sale of the Brest Road property had notice and an opportunity to challenge, object to or appeal the sale. Generally, when a creditor is over-secured, other parties with junior interests monitor the sale to ensure that the secured creditor is not overreaching.

In the present case, the Court's May 14, 2004 Order provided for payment of TCF's indebtedness in full, and for payment of another lien creditor and/or other costs. No party challenged that order. On July 25, 2004, the Court entered an Order approving the sale of Debtor's property to Gordon Mobley. No junior creditor, secured or unsecured, challenged the July 25, 2005 Order and no party sought an accounting by TCF. The Trustee (acting on behalf of creditors) cannot now, almost a year after the sale, raise an objection.

The Trustee argued at the hearing on the Trustee's Motion that he was not challenging the validity of the sale orders, rather the Trustee argued that the Orders authorizing the sale (entered on May 14, 2004 and July 15, 2004) did not authorize TCF to collect interest, fees and costs allowed to an over-secured creditor under 11 U.S.C. § 506(b). That section of the Code states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges, provided for under the agreement under which such claim arose.

The Trustee argues that after the sale Orders were entered, TCF had an affirmative obligation to obtain a separate court order approving payment of post-petition fees, interest and costs pursuant to 506(b) for the purpose of determining the reasonableness of the charges. However, the Trustee cites no case law requiring a secured creditor to file a separate motion seeking approval of § 506(b) fees, interest and costs on facts similar to those at bar; that is, where proceeds were distributed to the secured creditor pursuant to court orders authorizing the sale of real property after notice to all creditors listed on the debtor's bankruptcy matrix.

The cases cited by the Trustee are inapposite. In those cases, the 506(b) issue arose in the context of the sale proceeding itself (e.g. *In re Imperial Coronado Partners, Ltd.*, 96 B.R. 997 (9th Cir. BAP1989)(court authorized sale of property and *debtor* objected to amount sought by secured creditor)) or was raised by a creditor seeking to fix the amount of its claim (e.g. *Bradford v. Crozier (In re Laymon)*, 958 F.2d 72 (5th Cir.1992)(creditor seeking interest, costs and fees needed a determination regarding appropriate rate of interest)). In the instant case, if Debtor or any creditor was concerned about the amount paid to TCF, they could have (and should have) raised the issue at the time the sale was executed or by objecting prior to the entry of the final sale Order. For the Trustee to raise the issue now is a collateral attack on a final judgment.

### Conclusion

The Court finds that there is no provision in either the Code or case law which allows a Chapter 7 trustee to bring an action challenging an asset sale consummated pursuant to court order in the Chapter 11 proceeding. The Court is dismissing Count I of Plaintiff's Complaint on the grounds that Count I fails to state a claim upon which relief can be granted. Since Count II of Plaintiff's Complaint is predicated on the Court finding that TCF received more than is should have as a payoff on its secured claim, Count II is dismissed as well.