**In re CONSOLIDATED PROPERTIES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 90–4–3408–SD.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

March 16, 1993.

Stephen E. Leach, Tucker, Flyer & Lewis, Washington, DC, for debtor.

John H. Spellman, Hopkins & Sutter, Washington, DC, for Citibank, F.S.B.

Gladys L. Yates, Hunton & Williams, and Thomas A. Coughlin, Washington, DC, for Crestar Bank, N.A.

### MEMORANDUM OPINION ON MOTION TO VALUE SECURED CLAIM

E. STEPHEN DERBY, Bankruptcy Judge.

#### I. Statement of the Issues.

The significant issue raised in this matter is whether there is a limit on the amount of contractual late charges and default interest that should be recognized in an oversecured creditor's claim in a Chapter 11 case, to the detriment of junior creditors.

Consolidated Properties Limited Partnership, the Debtor, is the owner of property known as the Dale City Office Park in Prince William County, Virginia. In a motion to lift stay that has been resolved on other grounds, Citibank, F.S.B. ("Citibank") asserted a first priority secured claim in the amount of $1,614,626.14, as of June 16, 1992, with the Dale City Office Park as the sole collateral. Crestar Bank, N.A. ("Crestar"), a second lien claimant, objected to the amount of Citibank's claim, and it subsequently filed a motion to disallow Citibank's secured claims for a default rate of interest and for late charges. It also requested a determination of the reasonableness of Citibank's claim for legal fees and disbursements. Finally, Crestar suggested that Citibank's post-petition claim for interest should be limited to a market rate that is lower than Citibank's contract rate.

The fair market value of the Dale City Office Park was fixed at $1,600,000 for the hearing on relief from stay. If Citibank's claim is allowed in full, Crestar's junior lien claim has no collateral value. The only way for Crestar to realize on its junior lien position is to reduce Citibank's secured claim. Crestar challenges Citibank's claims for interest accrued at the contractual default rate of 18.75%, for late charges of $53,916.85 calculated as 5% of the total outstanding principal balance, for legal fees in the amount of $54,146.50, including $8,650.51 of unitemized disbursements, and for interest accrued at the contract rate of 13.75% to the extent it exceeds a suggested market rate for such loans of less than 10%.

#### II. Market Interest Rate vs. Base Contract Interest Rate.

Crestar objects to application of the pre-default contractual rate of interest to post-petition accruals, and it requests that the court allow only a lower, market rate of interest. The Fifth Circuit recently examined 11 U.S.C. § 506(b) to determine the applicable rate of interest on a claim by an oversecured creditor when the underlying agreement provided for a pre-default interest rate of ten percent and an eighteen percent interest rate after default. *Matter of Laymon*, 958 F.2d 72 (5th Cir.), cert. denied *sub nom.* in *Crozier v. Bradford,* —— U.S. ——, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992). Before resolving the conflict over the default rate of interest, the court examined the application of the base contractual rate to post-petition interest. Since a majority of courts utilized the contractual rate prior to enactment of the

Code, the Fifth Circuit held that, "when an oversecured creditor's claim arises from a contract, the contract provides the rate of post-petition interest." *Laymon*, 958 F.2d at 75 (citing 3 Collier on Bankruptcy, ¶ 506.-05, at 506–46).

This court agrees with the Fifth Circuit in *Laymon* that a base contractual rate of interest should be used for purposes of awarding interest to an oversecured creditor under § 506(b), assuming there are no extreme countervailing factors present, such as illegality or unconscionable self-dealing. Absent plain statutory language or express legislative history, the Supreme Court has been reluctant to interpret the Bankruptcy Code to effect a change in pre-Code practice. *Dewsnup v. Timm*, — U.S. —, —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992); *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990). The base contract rate was both the bargain between the debtor and the creditor and the expectation of junior creditors.

### III. *Default Rate of Interest.*

#### A.

■ Crestar disputes Citibank's claim to a post-petition default interest rate in its entirety. It would not be equitable, argues Crestar, to allow a senior creditor to gain advantage over other creditors through the imposition of a high default rate of interest during the period of delay caused by the administration of a reorganization case. It would also subvert the rehabilitative purpose of Chapter 11 to allow a debtor to reorganize. It is for these reasons, Crestar argues by analogy, that unsecured creditors are not allowed post-petition interest on their claims, citing 11 U.S.C. §§ 502(b)(2), 506(b); and *Nicholas v. United States*, 384 U.S. 678, 683, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966).

The contract in *Laymon, supra,* contained a higher rate of interest upon default; and the Fifth Circuit noted that under pre-Code law, a court was " 'not required in all cases to apply a contractual default rate of interest in determining the amount of an 'allowed secured claim' with-

in the meaning of [§ 506(b) ].' " *Laymon*, 958 F.2d at 75 (quoting *In re W.S. Sheppley and Co.*, 62 B.R. 271, 277 (Bankr. N.D.Iowa 1986), Yacos, J.). The court then adopted the flexible approach taken by most pre-Code courts in order to avoid possible inequitable or unconscionable results. It concluded that the contractual default rate was not absolutely binding and that the case must be remanded for an examination of the equities involved in the bankruptcy proceeding. *Laymon*, 958 F.2d at 75.

In its *de novo* review of the legal conclusions of the bankruptcy court, the Fifth Circuit recognized that the Supreme Court decision in *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) never addressed what rate of interest should be applied under 11 U.S.C. § 506(b). *Laymon*, 958 F.2d at 74. The Supreme Court in *Ron Pair* found that "interest on such claim" was not modified by the § 506(b) language "provided for in the agreement", which applies to fees, costs, or charges. 489 U.S. at 240, 109 S.Ct. at 1030. Consequently, nonconsensual liens may be entitled to interest under § 506(b) despite the absence of a consensual underlying agreement providing for such interest. This possibility, however, does not resolve the issue of what is the applicable rate of interest on consensual liens. The question remains whether a contractual default rate is binding, or whether a federal bankruptcy court may examine the reasonableness of a contractual default rate of interest and balance the equities between a creditor and the debtor, and among competing creditors.

■ The language of § 506(b), and particularly the placement of the commas in the text, has caused considerable debate over Congressional intent and the corresponding effect of the provision. *E.g.,* Citibank cites the court to *In re Skyler Ridge*, 80 B.R. 500, 511 (Bankr.C.D.Cal.1987), for the proposition that Section 506(b) provides no federal authority to modify a contractual rate of interest or to determine the reasonableness of a default rate, apart from a usury or unconscionability analysis. The

bankruptcy court in *Skyler Ridge* examined the plain language of § 506(b), and it concluded that reasonableness of any fees, costs, or charges is explicitly required, but that no similar constraint is placed on the allowance of interest. Consequently, the court concluded, "[a]ny restriction on the contract rate of interest must thus come from state law, and not from bankruptcy law. * * * [T]he Court has no power to determine the reasonableness of a default interest rate." *Skyler Ridge*, 80 B.R. at 511.

The language of § 506(b) provides no plain statement of the applicable rate of interest on a claim by an oversecured creditor. The section states, "there shall be allowed to the holder of such a claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). The court in *Skyler Ridge* interpreted this language to find that federal courts have no power to examine the reasonableness of contractual default rates of interest. However, the Supreme Court has stated that the clause, "provided for under the agreement", does not modify, "interest on such claim". *Ron Pair*, 489 U.S. at 240–243, 109 S.Ct. at 1030–1031. Consequently, a conclusion that the contractual rate of interest "provided for under the agreement" is the exclusive, binding rate on a bankruptcy court and that the reasonableness of such a rate can not be examined, is problematic. The plain language of § 506(b) makes no mention of either the contractual rate of interest or its reasonableness, although the terms of the agreement and their reasonableness are used to assess the validity of fees, costs, or charges.

The Fourth Circuit briefly examined § 506(b) while contrasting cramdown and mortgage cure in a Chapter 13 case. *Landmark Financial Services v. Hall*, 918 F.2d 1150 (4th Cir.1990). Although the Court determined that § 506(b) was inapplicable in the context of a mortgage cure, the Court's discussion of the valuation of a claim for purposes of cramdown provides the soundest and simplest explication of § 506(b) in light of the Supreme Court's decision in *Ron Pair*.

Section 506(b) provides the means by which the extent of a creditor's secured claim is established. *In re Hall*, 117 B.R. 425 (Bankr.S.D.Ind.1990). In the case of an oversecured creditor, the *secured* claim may include, up to the value of the collateral itself, two additional components: (1) fees, such as late charges, under the agreement giving rise to the claim, and (2) interest, regardless of whether the agreement provides for it or whether the claim was even created by an agreement. (Emphasis the court's).

*Landmark*, 918 F.2d at 1154 (citing *Ron Pair*, 489 U.S. at 240, 109 S.Ct. at 1030). "By the plain language of the statute, the two types of recovery are distinct." *Ron Pair*, 489 U.S. at 243, 109 S.Ct. at 1031. Oversecured creditors may recover the fees, costs or charges bargained for in their agreements, provided such fees are reasonable. 11 U.S.C. § 506(b). In addition, all oversecured creditors receive post-petition interest on their claims, whether or not they successfully bargained with the debtor for a consensual agreement providing for such interest. *Ron Pair*, 489 U.S. at 243, 109 S.Ct. at 1031. Section 506(b) does not, however, explicitly grant to oversecured creditors, with consensual liens, the contractual rate of interest.

A default rate of interest that reflects a reasonable attempt to compensate a creditor for extra costs incurred after default is more in the nature of additional "fees, costs, or charges provided for under the agreement" than mere "interest on such claim", which is not tied to an underlying agreement by § 506(b). Section 506(b) allows post-petition interest on the claims of oversecured creditors; however, it does not state that oversecured creditors are automatically entitled to a bargained for rate of interest, without limit. An increase in the rate of interest upon default may be either a coercive penalty or a bargained for attempt to compensate a creditor for its extra costs after a default. If it is a penalty, it would be inequitable to allow its impact to fall on other creditors or to allow it to

destroy a debtor's opportunity to reorganize.

Section 506(b) requires bankruptcy courts to examine the reasonableness of late charges, fees and costs provided under agreements, thereby protecting a debtor's opportunity to reorganize, and perhaps more importantly, preserving some recovery for junior secured and unsecured creditors. Default rates of interest should be treated similarly to late charges and examined for reasonableness by bankruptcy courts. Merely because a creditor fashioned its protection and compensation in the form of an increased default rate of interest under an agreement, it should not escape a reasonableness inquiry, especially when the enhanced default rate of interest is at the expense of junior creditors of the debtor.

### B.

*Sheppley* also relies upon the reasoning of *Vanston Bondholders Protective Com. v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). Although the Supreme Court in *Vanston,* in refusing to award interest on interest to a first mortgage bondholder, based its decision on the fact that the bankruptcy proceedings themselves had been the cause of the missed payments, it recognized that "the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor." 329 U.S. at 165, 67 S.Ct. at 241. As one court recently stated, "Bankruptcy essentially is, after all, a proceeding of equitably adjusting contending creditors' claims and rights, and effectuating a fair distribution of a debtor's property among those creditors." *In re Hollstrom,* 133 B.R. 535, 541 (Bankr.D.Colo.1991) (holding that a bankruptcy court was not required to apply

sion does not answer the *federal* question of relative distributive rights of creditors in a reorganization proceeding. As the Supreme Court stated in the *American Surety* opinion ... "appropriate regard" should be given to the state law but the distribution in bankruptcy "is in the last analysis a matter of federal law." (Emphasis the court's).

*Sheppley,* 62 B.R. at 278 (quoting *American Surety Co. v. Sampsell,* 327 U.S. 269, 272, 66 S.Ct. 571, 573, 90 L.Ed. 663 (1946)).

matter of federal law. The Fourth Circuit recognized the primacy of federal law in this area when it ruled that attorneys' fee agreements are enforceable under § 506(b), notwithstanding the creditor's failure to comply with state law. *Unsecured Creditor's Committee v. Walter E. Heller,* 768 F.2d 580 (4th Cir.1985) (determining that Congress intended to eliminate the previous requirement that such agreements were only enforceable in accordance with applicable state law). See also *Mack Financial Corp. v. Ireson,* 53 B.R. 118, 120

(W.D.Va.1985) (accepting the reasoning of state law, although state law was not determinative of § 506(b) reasonableness), affirmed, *Mack Financial Corp. v. Ireson*, 789 F.2d 1083 (4th Cir.1986). Reasonableness under § 506(b) is a matter of federal law.

### C.

Reasonableness of a default rate of interest depends in part upon whether or not the defaulting party is in bankruptcy. When a party defaults on a contract, it has violated the terms of a bargained agreement. Foreseeable costs of the non-breaching party should be recoverable, especially if they were anticipated and compensation for those costs was incorporated into the underlying agreement. Many costs of default will be difficult to estimate, and a contractual clause awarding an increased interest rate upon default may be a reasonable way of providing for both the expected and unexpected additional costs. As between a defaulting and non-defaulting party, the terms of the agreement should normally be honored, absent unconscionable results. Therefore, contractual default rates of interest will generally be enforced between the parties under state law. However, the filing of bankruptcy adds a new dimension to this otherwise two-party dispute.

In bankruptcy, multiple creditors are involved, secured and unsecured, each with a valid claim against the debtor. Assuming the assets of the estate are insufficient to satisfy all creditors, distribution requires that priorities of creditors be respected. The existence of a perfected security interest rewards creditors, who have put other parties on notice of their interest in a debtor's assets, with priority in distribution. Congress has allowed oversecured creditors to recover interest on their claims, as well as reasonable fees, costs and charges provided for in an underlying agreement, before any other creditor, secured or unsecured, recovers even the principal portion of its claim. 11 U.S.C. § 506(b).

Citibank, an oversecured creditor, claims a contractual default rate of interest that it asserts is intended to compensate Citibank for expected and unexpected costs related to the debtor's default. This default rate is calculated on the principal balance due Citibank, and it is added to its secured claim, together with all late fees assessed for installment payments in default, and attorneys fees. The remaining creditors, secured and unsecured, are likely to receive little or no recovery if Citibank is allowed interest at the default rate of 18.75% on the principal balance outstanding and its other contractual fees, costs and charges. The court must therefore determine whether application of the contractual default rate to the debt of Consolidated Properties, in addition to the other fees, charges, and costs provided for in Citibank's loan agreement, is reasonable under these circumstances.

Bankruptcy courts are divided over the application of contractual default rates of interest. When the rate is within an acceptable range some courts have argued that no federal authority exists to even engage in a reasonableness inquiry. *E.g.,* *In re Schaumburg Hotel Owner Ltd. Partnership*, 97 B.R. 943, 951 (Bankr. N.D.Ill.1989) (enforcing a 19% default rate rather than 14.7% pre-default contract rate); *Skyler Ridge*, 80 B.R. 500, 511 (14.-75% default rate applied instead of 10.75% pre-default rate). As discussed above, however, this court respectfully disagrees with a reading of § 506(b) that does not allow default rates of interest to be tested by a reasonableness standard. Other courts, finding no evidence of the reasonableness of default interest rates they consider seemingly excessive, have applied the non-default contract rate. *E.g., In re DWS Investments, Inc.,* 121 B.R. 845 (Bankr. C.D.Cal.1990) (25% default rate and 14% non-default rate); *In re Hollstrom*, 133 B.R. 535 (Bankr.D.Colo.1991) (36% default rate and 12% non-default rate).

The specific facts and equities involved in individual cases often dictate whether the default rate is applied. One court cited five pertinent factors in disallowing a default rate of interest. *In re W.S. Sheppley and Co.*, 62 B.R. 271, 277 (Bankr.N.D.Iowa 1986) ((1) no realistic risk of non-payment

of debt, (2) no evidence the basic contract rate was not a prevailing market rate, (3) a relatively quick orderly liquidation proposed, (4) distribution not likely to reach down to shareholder interests, (5) some indication delay due in part to unnecessarily obstructive tactics by oversecured creditor). Where a default rate was admittedly intended to coerce performance by the debtor rather than compensate the nonbreaching party, a bankruptcy court recently refused to enforce an additional 3% default rate that it found to be a penalty. *Matter of Timberline Property Development, Inc.,* 136 B.R. 382 (Bankr.D.N.J. 1992) (three percent increase in the interest rate upon default). However, a contractual default rate within the range of such rates typically charged has been allowed when the debtor would receive "an undeserved windfall." *In re Courtland Estates Corp.,* 144 B.R. 5, 9 (Bankr.D.Mass.1992) (debtor previously paid off all unsecured creditors, so "the equities of the case do not compel a different result.")

The standard of reasonableness is both inherently fact specific and equitable. On the facts of this case, Citibank claims both a default rate of interest that is 36% higher than the contract rate and late charges that are 5% of the aggregate principal balance. Both are justified by Citibank as compensation for additional expected and unexpected costs to Citibank arising from Debtor's default. Collection of both is at the expense of junior creditors. One charge is reasonable compensation, but a second charge on these facts is a penalty and not reasonable. See *Matter of Timberline Property Development, Inc., supra.* In this reorganization case under the Bankruptcy Code, it is not reasonable to allow Citibank a secured claim for default interest in addition to late charges of 5% on the entire principal balance. The base contract rate of 13.75% is adequate compensation to Citibank for the time value of the principal balance of the loan.

### IV. *Late Charges.*

■ The Fourth Circuit has upheld allowance of late charges of five percent of unpaid installments. *Mack Financial Corp. v. Ireson,* 789 F.2d 1083 (1986). In affirming the district court's reversal of the bankruptcy court below, the Fourth Circuit held that late charges are permissible under § 506(b) when the debtor has specifically agreed to the charges, and the conditions specified by the district court are met. *Id.* at 1084. The district court had held that the creditor must be oversecured and the late charge must be reasonable. *Mack Financial Corp. v. Ireson,* 53 B.R. 118 (W.D.Va.1985).

■ The Fourth Circuit in *Mack* approved a late charge of five percent of missed installments, not five percent of the principal of a loan. 789 F.2d 1083. In the instant case, however, Citibank's loan matured before Debtor filed its bankruptcy petition, and the Debtor did not pay the principal balance due. The promissory note provides for a five percent charge on any payment of principal or interest not paid fifteen days after it became due. Merely because an otherwise reasonable late charge is calculated as a percentage of the remaining principal balance unpaid after maturity, rather than on one or more unpaid installment payments, does not make it unreasonable where it is not added to a default rate of interest. A late charge is calculated only on payments not paid as scheduled under a loan agreement. It is different in kind from an acceleration penalty that is calculated on balances not due except for a default.

In this case, a voluntarily contracted late charge that attempts to provide for the expected and unexpected costs a secured creditor may incur upon default by a debtor may be allowed as reasonable, provided it is not combined with a claim for default interest. Alternatively, if Citibank presses its claim for the default rate of interest and the amount is found reasonable, it would not be reasonable to allow it also to claim the late charge calculated on the aggregate principal balance.

### V. *Attorneys Fees and Costs.*

■ Crestar has challenged the reasonableness of the legal fees and costs incurred by Citibank that are allowable under 11 U.S.C. § 506(b). The promissory

note held by Citibank allows after default and "(to the extent permitted under applicable law) costs and reasonable attorneys' fees incurred by the holder hereof in collecting or enforcing payment thereof." Section 506(b) also requires that the attorneys' fees be reasonable, and the bankruptcy court may review these fees for the purpose of determining what is the amount of Citibank's secured claim under § 506(b) that may be recognized in Debtor's plan.

Crestar claims the amount of the fees and costs requested, $54,146.50 as of May, 30 1992, is unreasonable on its face. The court is not prepared to make such a finding. However, the documentation that has been provided in support of Citibank's request for legal fees and costs is not adequate for the court to make a determination of reasonableness under § 506(b).

▇ Citibank, in its opposition to Crestar's motion, directs the court to a one page summary of legal fees and costs provided at the lift stay hearing and to the computer time sheets provided in Exhibit A of the current opposition. The court cannot approve $8,650.51 for unitemized disbursements, without justification that they were necessary and reasonable. The court requires the kind of explanation and breakdown of services required of a debtor's counsel seeking approval of fee applications. This involves a more complete explanation of the services rendered, costs incurred, and time spent on different aspects of the legal representation, also required is a statement as to the exercise of billing discretion, an explanation of the number of lawyers billing time and their individual hourly rates, and some discussion of the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) (the "lodestar analysis" as applied by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (1978)), where applicable for counsel of an oversecured creditor. Consequently, the court reserves consideration of the reasonableness of claimed attorneys fees and costs until Citibank submits sufficient description and justification of requested legal fees and costs to enable the court to consider the reasonableness of the claimed costs and fees documented in Citibank's timesheets.

## VI. *Conclusions.*

For purposes of this bankruptcy case, and pursuant to 11 U.S.C. § 506(b), Crestar's motion to disallow Citibank's secured claim for its basic contract rate of interest post-petition and for late charges of 5% will be denied. Crestar's motion will be granted to deny Citibank's claim for a default rate of interest. Finally, Citibank's claim for legal fees and costs will not be allowed until, and except to the extent that, Citibank justifies such claims to the court's satisfaction as necessary and reasonable.