In re **BRUNSWICK APARTMENTS OF TRUMBULL COUNTY, LTD., Debtor.**

**FIRST BANK OF OHIO, Appellant,**

v.

**BRUNSWICK APARTMENTS OF TRUMBULL COUNTY, LIMITED, Appellee.**

BAP Nos. 97–8006, 97–8007.

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued Nov. 5, 1997.

Decided Jan. 23, 1998.

**522**

Douglas S. Roberts, argued and on brief, Clark, Perdue & Roberts, Columbus, OH, for Appellee.

James A. Giles, argued and on brief, Mount Vernon, OH, for Appellant.

Before: BAXTER, RHODES, and STOSBERG, Bankruptcy Appellate Panel Judges.

## OPINION

PER CURIAM.

First Bank of Ohio (the Bank) appeals the bankruptcy court's determination of the fees and costs allowed as part of its secured claim against Brunswick Apartments of Trumbull County, Limited, (the Debtor) by virtue of a promissory note executed by the Debtor. The Bank contends that the court's disallowance of a service charge on all payments under the promissory note, the reduction of counsel fees sought, and the disallowance of certain internal operating costs incurred in its loan collection efforts constituted reversible error. We conclude that the bankruptcy court properly construed 11 U.S.C. § 506(b) in these matters and affirm the decision.

## I. ISSUES ON APPEAL

The issues are whether the bankruptcy court properly applied § 506(b) in its determination of the costs and expenses to be included in the Bank's oversecured claim and whether the court properly interpreted the parties' contract.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to hear the appeal of a final order of the bankruptcy court. 28 U.S.C. § 158(b). A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (citations and internal quotations omitted). The parties to this appeal consented to its transfer to the BAP.

The bankruptcy court's conclusions of law are reviewed de novo. *Mapother & Mapother, P.S.C. v. Cooper,* 103 F.3d 472 (6th Cir.1996). In addition, this panel reviews a bankruptcy court's findings of fact for clear error. *XL/Datacomp, Inc. v. John R. Wilson,* 16 F.3d 1443, 1447 (6th Cir.1994); FED. R. BANK. P. RULE 8013. In this matter, there is an issue as to the interpretation of language in a contract as well as factual determinations by the court. Interpretation of a contract is a matter of law subject to de novo review. *United States v. Century Offshore Management,* 111 F.3d 443 (6th Cir. 1997); *First Am. Bank v. Fidelity & Deposit Co.,* 5 F.3d 982 (6th Cir.1993). Accordingly, de novo is the appropriate standard of review for the bankruptcy court's interpretation of the language of the contract. The bankruptcy court's determination regarding the reasonableness of fees involves factual findings, subject to review under the clearly erroneous standard. See *Manufacturers National Bank v. Auto Specialties Manufacturing Company,* 18 F.3d 358 (6th Cir.1994).

## III. FACTS AND PROCEDURAL HISTORY

The Debtor executed a promissory note (the Note) in favor of Cardinal Industries Mortgage Company on February 1, 1989 in the amount of $1,282,000.00. The Note was later assigned to First Bank of Ohio by the Federal Deposit Insurance Corporation. Subsequently, the Debtor experienced financial difficulties and eventually defaulted on the Note. Thereupon, the Bank commenced foreclosure proceedings which caused the Debtor to file its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101–1129.

Following the bankruptcy filing, a dispute arose between the Bank and the Debtor regarding the amount owed on the Bank's secured claim. The Debtor filed its Motion

For Determination Of Allowed Amount Of Secured Claim Of First Bank. The court fixed the Bank's secured claim in the amount of $1,308,714.40, subject to adjustment. No service charge was allowed on the secured claim. The court awarded, however, certain attorneys fees as part of the Bank's claim but disallowed other requested fees and costs. On appeal, the Bank challenges the bankruptcy court's disallowance of the full amount of its requested late charges, the total amount of attorney compensation, in addition to other fees and collection costs incurred.

## IV. DISCUSSION

It is undisputed that the Bank's security interest in the subject collateral is oversecured. As such, 11 U.S.C. § 506(b) allows an oversecured claimant not only postpetition interest payments but also affords reasonable fees, costs and charges as provided in the attendant security agreement. See, *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Section 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection ( c ) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claims arose.

11 U.S.C. § 506(b). Our resolution of the issue presented requires consideration of the import of § 506 and the degree of deference given to its "reasonableness" standard by the bankruptcy court.

 The Bank does not challenge the amount of postpetition interest allowed by the bankruptcy court but does challenge the reasonableness of the allowed related fees and costs portion of its secured claim. The Bank's lien is consensual. Where, as here, the lien is consensual and is so provided for in the underlying security agreement, it is generally recognized that an oversecured claimant can recover fees and costs from any surplus value in the collateral as long as such fees and costs are reasonable and the surplus exists. *Ron Pair,* 489 U.S. at 241, 109 S.Ct.

at 1030. The Bank specifically argues that the bankruptcy court erred when it disallowed a five percent service charge for the amount due under the Note on January 1, 1994. An examination of the Note reveals that the amount due on January 1, 1994 constituted a "balloon" payment on the matured principal balance, as opposed to a periodic installment payment under the Note. Indeed, the Note provides:

I. . . . Principal and interest shall be due and payable in monthly installments based on a 30–year amortization schedule . . ., each in the initial amount of Twelve Thousand Eight Hundred Seven and 95/100 Dollars ($12,807.95) beginning on the first day of February, 1989, and continuing on the first day of each and every month during the term hereof . . . to and including January 1, 1994, on which date the balance of the principal together with interest accrued thereon, shall be due and payable. . . .

VI. In the event any one or more installments are not received by Lender prior to the 6th business day after the same shall be due and payable, the undersigned agrees to pay Lender a service charge equal to five percent (5%) of the amount of such installment for each month such installment remains unpaid.

As noted above, a thirty–year amortization schedule required fixed monthly installment payments in the amount of $12,807.95 to be paid by the Debtor to the Bank beginning on February 1, 1989 and continuing until January 1, 1994, when the matured principal balance was "due and payable." As provided under Paragraph VI of the Note, a five percent service charge was to be levied upon any delinquent "installment" payment. The Bank's claim included this service charge not only upon the Debtor's delinquent installment payments but also upon the matured "balloon" balance on the principal which became "payable" on January 1, 1994. The Bank's assessment of the service charge on the matured principal balance was disallowed by the bankruptcy court on the grounds that it was not the equivalent of an obligation to make an installment payment under the Note. We concur. To allow otherwise would

constitute an unreasonable and unwarranted charge not provided for under the terms of the Note. A close reading of Paragraph I of the Note clearly shows that the final installment payment is due on the same date as the balloon payment. This evinces two points: (1) the last installment payment is a separate payment from the balloon payment and (2) pursuant to the term of Paragraph III, only the installment payment is to be assessed the five percent service charge for late payment, not the balloon payment. Accordingly, the bankruptcy court committed no error in disallowing the service charge on the matured principal payment as part of the Bank's secured claim. In this regard, the Bank's reliance on *In re Consolidated Properties Limited Partnership,* 152 B.R. 452 (Bankr.D.Md. 1993) is misplaced. In that case, the promissory note in question provided for a five percent surcharge on any payment of principal or interest that was not timely paid. Id. at 458. Those facts clearly differ from the facts in the present case which underscores the importance of construing the actual terms of the Note.

■ The Bank next asserts that the bankruptcy court erred in denying a portion of its secured claim which was attributable to legal fees charged by its outside counsel. In this regard, the bankruptcy court approved an amount of $11,551.97, as legal fees paid for the law firm of Arter & Hadden as part of the Bank's secured claim. The fees requested were $63,653.76. Reimbursement of legal fees is properly made to an oversecured claim holder where such is expressly provided in the security agreement and where the fees are reasonable. *Manufacturers National Bank v. Auto Specialties Manufacturing Co.,* 18 F.3d 358, 360 (6th Cir.1994). Herein, the Note clearly provides for reasonable compensation to be paid relative to the loan collection efforts of its legal counsel. Section 506 of the Code grants broad discretion to the bankruptcy court to determine the reasonableness of the fees requested. Considering the evaluative factors applied by the bankruptcy court (Appendix to Br. of Appellant, Vol. I, p. 57), and its analysis of the work performed, we conclude that the compensation awarded in this regard was reasonable and the bankruptcy court's findings were not clearly erroneous.

■ The bankruptcy court's analysis of the portion of the Bank's claim relating to fees was meticulous. Regarding its denial of fees for services to enforce a purported compromise, the court found there was no compromise ever reached (Appendix to Br. of Appellant, Vol. I, p. 5) and that attempts to enforce a compromise were without merit. It further found that the evidence adduced in this regard failed to substantiate a factual basis for the assertions made. (Id.) Our examination of the record reveals that those findings were not clearly erroneous.

■ A portion of the fees sought pertained to the Bank's objection to plan confirmation. Under the proposed plan, the Bank's claim was not impaired. The Bank was to be paid in full in cash on the effective date of the plan. Despite this treatment, the Bank filed a twelve page objection to the plan, challenging practically every element in § 1129(a) and (b). The bankruptcy court noted that feasibility of the plan was not at issue because the plan funding was placed in escrow. In addition, the court noted that the Bank did not pursue its objection at the hearing. (Id. at 6.) The court further found that most of this effort was unnecessary to protect the Bank's interests, was inconsistent with the Bankruptcy Code, were unrealistic in terms of the arguments advanced, and otherwise unreasonable. (Id. at 7.) Based on these findings, the bankruptcy court included fees only for the time that would have been necessary to prepare a "no waiver" objection, and for time spent attending the hearing. This determination was not clearly erroneous.

■ Next, the Bank argues that the bankruptcy court erred in awarding no fees to Tonti. The promissory note at paragraph 7 provides:

> VII. In event of any default in the payment hereof, and if the same is referred to an attorney at law for collection or if any action at law or in equity is brought with respect hereto, the undersigned promises to pay Lender all expenses and costs, including but not limited to reasonable attorney's fees. . . .

Brunswick Apartments of Trumbull County, Ltd. Promissory Note December 8, 1988. The bankruptcy court found that the services of Tonti were not the type of fees contemplated by the Note. Whether the fees are allowable is based upon whether they are of the type contemplated by paragraph VII and if so, whether they are reasonable.

■ A cardinal principle of contract interpretation is that the contract language should be given its ordinary meaning. *Delta America Re Ins. Co. v. National Distillers & Chemical Corp., et al.,* 900 F.2d 890, 893 (6th Cir.1990). The Bank asserts that the language of the agreement allows for the payment of all expenses and costs once legal action is triggered by the default of the Debtor. That reading of the agreement is consistent with the plain language of the Note. Therefore, the fees of Tonti are compensable under the Note, but only if they are reasonable.

As noted, it is within the bankruptcy court's discretion to determine the reasonableness of fees. In regard to the fees for Tonti, the basis of the bankruptcy court's determination to award no fees was its finding that the services of Tonti were not technically legal services and therefore could not be passed on to the Debtor. In addition, the bankruptcy court found that even if the services provided by Tonti were the types of services contemplated by the Note, the fees submitted were estimates and not exact figures, and that the charges for some of the services he provided had already been allowed for other attorney fees. (Jan. 14, 1997 Order at 4.; Appendix to Br. of Appellant, Vol. II, p. 73.). The bankruptcy court's order was supported by its determination that Tonti had not provided adequate records to support his fee request. The bankruptcy court not only found that Tonti's time records were so inadequate that they made it difficult to determine the extent of compensable services, it also noted that Tonti was an insider (director) of the Bank, and that his son was a ninety percent shareholder. Tonti's fees were invoiced as a consultant. Although he is a licensed attorney, the bankruptcy court found that he provided no legal services. To award fees under these circum-stances would be tantamount to giving the secured party a blank check to incur fees. The bankruptcy court's disallowance of Tonti's fees as part of the Bank's secured claim was not erroneous. Thusly, the bankruptcy court's determination that Tonti's fees were not reasonable is not clearly erroneous.

■ We finally address the appropriateness of the Bank's request that the regular salaries of the in-house employees be included in the Bank's secured claim. The bankruptcy court denied the internal employee costs as part of the secured claim on the basis that they were not a qualified expense which could be passed on to the Debtor under Note Paragraph VII.

The bankruptcy court determined that there were no actual costs or expenses associated with the time spent by salaried employees on collection efforts because the Bank occurred no "out of pocket" expenses. Nevertheless, the Bank must prove that such fees are reasonable, actual and necessary. The testimony presented by the Bank failed to demonstrate actual costs and expenses beyond its normal operating costs attributable to the Debtor's loan. Alan Shind, CEO of the Bank, testified that he and employee Dan Hartman worked on the Debtor's loan, and were paid their "normal annual salary" with nothing additional, such as overtime or additional salary. (Transcript of Oct. 12, 1995 hearing pp. 167, 183; Appendix to Br. of Appellant, Vol. I, pp. 139, 155.) Further, Shind testified that no log was kept concerning the hours that he and Hartman spent on the Debtor's loan. (Transcript of Oct. 12, 1995 hearing p. 145; Appendix to Br. of Appellant, Vol. I, p. 117.) Under § 506, the creditor must prove that such expenses are reasonable, actual and necessary. Herein, those standards were not met. The Bank could not demonstrate actual costs and expenses beyond its normal operating costs attributable to the Debtor's loan. Accordingly, the bankruptcy court's finding that First Bank did not incur "costs and expenses" related to the salaried employees time was not clearly erroneous.

## V. CONCLUSION

The decision of the bankruptcy court is AFFIRMED.