**In re Isagani T. HERNANDEZ, and Haydee L. Hernandez, Debtors.**

**No. 02–30956.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Dec. 15, 2003.

344

Ronald E. Gold, Beth A. Buchanan, Forst, Brown & Todd, Cincinnati, OH, for Sky Bank.

Donald F. Harker, III, Dayton, OH, for the Debtors.

## DECISION AND ORDER DETERMINING ALLOWANCE OF LATE CHARGES AND ATTORNEY FEES

WILLIAM A. CLARK, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the standing General Order of Reference in this District. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

This matter is before the court on the Debtors' Motion to Reconsider Issue of Late Fees [Doc. # 177] and Sky Bank—Ohio Bank Region's Memorandum of Attorney Fees [Doc. # 186]. Sky Bank is a secured creditor in this bankruptcy by virtue of a first priority lien on several pieces of property owned by the Debtors. Of particular importance to this matter is the property located at 38 South Allison Avenue in Xenia, Ohio, often referred to as the Spencer Motel. Debtors purchased the Spencer Motel on November 30, 1995 from Allen and Rosella Spencer through an Assumption Agreement in which the Debtors assumed an Adjustable Rate Note executed by the Spencers in favor of Home Federal Savings Bank of Xenia on May 31, 1991 (the Adjustable Rate Note is hereinafter referred to as the "Note"). Sky Bank is the holder of the Note and Assumption Agreement.

On June 11, 2002, Sky Bank filed a claim in the amount of $1,996,359.30 based on the amount owed under the Note. On September 11, 2003, Debtors objected to Sky Bank's claim arguing that the claim should be decreased by the amount received by Sky Bank in a subsequent sale of the Spencer Motel and that the claim should not include attorney fees, costs, and late fees. [Doc. # 164] Sky Bank responded to Debtors' claim objection [Doc. # s 168 & 170], and on October 8, 2003, after oral arguments, the court issued an order allowing Sky Bank's claim in the following amounts:

| | |
|---|---|
| Principal | $ 624,512.08 |
| Interest | $ 261,159.73 |
| Late Fees | $ 93,451.06 |
| Costs | $ 84,440.46 |
| Total: | $1,063,563.33 |

At that time, the court held its ruling on the issue of attorney fees in order to allow Sky Bank to file a Memorandum of Attorney Fees for review by the court [Doc. # 175].

On October 16, 2003, Debtors filed a Motion to Reconsider Issue of Late Fees requesting that the court reconsider the portion of its October 8, 2003 order allowing the full $93,451.06 in late fees. [Doc. # 177] The Debtors argue that the late fees assessed are unreasonable and contrary to the terms of the Note. Sky Bank filed its response to Debtors' motion on November 10, 2003 [Doc. # 185], and Debtors have since replied to that response. [Doc. # 187]

On November 10, 2003, Sky Bank filed its Memorandum of Attorney Fees requesting attorney fees in the amount of $58,282.00 and expenses in the amount of $2,255.50 relating to these Chapter 11 proceedings. [Doc. # 186] On November 20, 2003, Debtors filed a response to Sky Bank's Memorandum of Attorney Fees objecting to many of the expenses and fee entries set forth in Sky Bank's Memorandum. [Doc. # 188] Sky Bank replied to Debtors' response on December 5, 2003. [Doc. # 195]

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ The parties disagreements on both of these issues involve the reasonableness of assessments made against the Debtors under the terms of the Note as those assessments pertain to the allowance of Sky Bank's claim in this bankruptcy. Sky Bank is over secured in the bankruptcy. The determination of whether an over secured creditor is entitled to interest, fees and costs is governed in this instance by 11 U.S.C. § 506(b). Bankruptcy Code section 506(b) sets forth as follows:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

When claiming interest, fees, and expenses, the creditor carries the burden of showing that it has met the elements of section 506(b). In order to do so the creditor must show that (1) it has an allowed secured claim; (2) the claim is over secured; (3) the underlying agreement provides for the borrower to pay the lender's fees; and (4) the fees are reasonable.

The parties do not dispute that the first three elements of section 506(b) are met. The issues before the court in both the Debtors' Motion to Reconsider Late Fees and Sky Bank's Memorandum of Attorney Fees is whether the late fees claimed and the attorney fees requested by Sky Bank are reasonable.

As such, the court will deal with each of these issues separately.

### I. Late Fees

■ In the Motion to Reconsider Late Fees, the Debtors assert that the late fees of $93,359.73 were improperly charged and are unreasonable. Specifically, the Debtors argue that prior to the maturity of the Note on June 1, 2001, the amount of late fees charged on the Note were $7,091.33. On June 1, 2001, however, the Note matured and Sky Bank charged the Debtors an additional $86,359.73 in late fees. This amount was based on the following language in the Note:

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0% of my overdue payment of principal and interest. I will

pay this charge promptly, but only once on each late payment.

The $86,359.73 charged by Sky Bank on June 1, 2001 was five percent (5%) of the entire outstanding principal and interest owed by the Debtors under the Note. Debtors argue that this amount is improper because it takes into account the entire balance of the Note instead of just the late payment which was due on June 1, 2001.

Sky Bank argues, however, that the June 1, 2001 late charge was proper because, on the date the Note matured, the "overdue payment of principal and interest" was the entire remaining balance of the Note. Sky Bank also noted at oral argument that a determination that any other reading of the Note will create ambiguity in the Note where it would not exist otherwise.

■ The issue before the court is whether the $86,359.71 late charge applied on June 1, 2001 is supported by the Note and whether that amount is reasonable under section 506(b) of the Bankruptcy Code. The determination of what constitutes a reasonable charge is a question of federal law. *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 424 (Bankr. S.D.Ohio 1993). In reviewing a claim for late charges under section 506(b), the bankruptcy court should give deference to the language of the negotiated contract. *See In re Brunswick Apartments of Trumbull County, Ltd.*, 215 B.R. 520, 523 (6th Cir. BAP 1998); *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 404 (Bankr. W.D.Tenn.1991). The late charges must, however, be reasonable to be allowable. *See In re Apple Tree Partners*, 131 B.R. at 404. As such, the court should "construe the actual terms of the [n]ote" in order to determine the amount and reasonableness of the late charges. *In re Brunswick Apartments of Trumbull County, Ltd.*, 215 B.R. at 524. It is well-settled, however,

that, when ambiguous, documents will be construed against their drafter. *See In re Buckeye Countrymark, Inc.*, 251 B.R. 835, 839 (Bankr.S.D.Ohio 2000).

Sky Bank describes the terms of this Note as "clear." The court, however, disagrees. The Note provides no definitions at all. The term "monthly payment" is introduced in section 3 and provides that the Debtors

> will make monthly payments on the first day of each month beginning on July 1, 1991. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on June 1, 2001, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

In this section alone, the Note uses each of the terms "monthly payments," "these payments," "other charges," "amounts," and "those amounts" to describe the same "monthly payment" in section 3(A). The reckless use of these terms results in patent ambiguity.

Reviewing the late charge section itself, the court finds a similar lack of clarity. Section 7(A) of the Note states as follows:

> If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, then I will pay a late charge to the Note Holder. The amount of the charge will be 5.0% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

The first sentence, identifying the non-receipt of a "monthly payment" as the late charge trigger, indicates that the entire section is intended to address the failure

to make the monthly installments which began at $18,883.63 per month. The second sentence, however, then indicates that the amount of the charges will be five percent of the "overdue payment of principal and interest," leaving the court to wonder if the Note is identifying the principal and interest included in the monthly installment payment discussed in section 3(A) or some other unpaid balance consisting of all principal and interest. Finally, the third sentence of section 7(A) indicates that the late charge will be paid only once on each late payment. Certainly that indicates that the Note is contemplating an assessment of the late charge based on a monthly installment payment. Given these inconsistencies and the various interpretations that could result from them, the court finds that the late charge section of the Note is ambiguous and will be construed against Sky Bank.

Sky Bank hinges its argument on the language in the second sentence of section 7(A) which states that "[t]he amount of the charge will be 5.0% of my overdue payment of principal and interest." Thus, argues Sky Bank, because the Note matured on June 1, 2001 thereby making the entire amount of the principal and interest due, then the entire amount of the principal and interest due under the Note was the proper basis for the five percent late charge. While the court understands Sky Bank's reading of section 7(A), the court finds that a more reasonable reading of the Note to be that the five percent charge is meant only for one delinquent monthly installment payment.

This is first apparent under a reasonable reading of section 3(A) of the Note. In the last sentence of the second paragraph in section 3(A), the Note identifies the potential for balloon payment in this Note by referring to "those amounts" which will be paid on the "maturity date" of the Note.

This language indicates that the entire balance due at maturity on June 1, 2001 is to be treated differently than the regular monthly installment payment also due on the same day.

The court's reading of the language of section 7(A) leads to a similar conclusion. In the third sentence of section 7(A), the Note states that the late charge will be paid "only once on each late payment." That language is clearly included contemplating a situation where the borrower has failed to make two or more monthly installment payments. In such a case, the Note calls for only one charge on each late payment thereby avoiding an outcome where the late charge is ever increasing beyond the stated five percent of the monthly installment payment. If the late charge language were intended to encompass the much larger five percent of the entire balance due after maturity on June 1, 2001, as argued by Sky Bank, then the limiting language in the third sentence of section 7(A) would not have been included.

Finally, the court was persuaded by the second sentence of section 7(A). The sentence states that the late charge will be calculated as five percent of the "overdue payment of principal and interest." Although seemingly insignificant in this Note filled with ambiguity, this language is informative. The court found only one other use of the term "overdue" throughout the Note. In section 7(C), the Note states that if the borrower is in default, which is earlier described as not paying the "the full amount of each monthly payment on the date due," then the bank

> may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the [bank] may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe of this amount.

It is clear that the amount "overdue" in the above sentence is identifying monthly installment payments not made. It is just as clear that "overdue" is not describing the entire balance due because the entire balance due on the Note is described in the same sentence as the "full amount of principal which has not been paid and all the interest that I owe on that amount."

Thus, the lack of more explicit language the late charge section 7(A) results in a determination that the late charge is to be based on the delinquent monthly installment and not on the "full amount of principal which has not been paid and all the interest that I owe on that amount," as is so clearly described elsewhere. The court found several sections of the Note that aptly described the entire unpaid balance of the Note with clarity. On three occasions, the Note uses the term "unpaid principal." In each circumstance, the Note is clearly identifying entire amount of the principal not yet paid by the borrower. If the late charge assessment described in section 7(A) was to encompass the entire balance due at maturity on June 1, 2001, then the Note would have provided explicit language to that effect.

Given the ambiguity of the Note and absence of explicit language to the contrary, the court finds that a reasonable reading of the Note leads to the conclusion that the five percent late charge assessed against the June 1, 2001 payment should be based on the delinquent monthly installment due on June 1, 2001.

Beyond the actual terms of the Note, the court also looked to the "underlying economic rational" for the late charge. *See In re Outdoor Sports Headquarters, Inc.*, 161 B.R. at 424. In this case, the parties agree that the late charge was meant to compensate Sky Bank for additional costs incurred administering the delinquent Note. According to the exhibits provided by Sky Bank at hearing, however-

er, the late charge was assessed on June 1, 2001, the day that the Note matured. If the purpose of the late charge were to compensate Sky Bank for additional administrative costs, it would seem that the bank would have waited for the administrative time to run until June 15, 2001, as provided under the terms of the Note, to assess the late fee. Sky Bank's treatment of the Note appears to have been more like a penalty than an actual administrative remedy. Five percent of the outstanding balance of the Note is excessive as compensation for the extra administrative costs associated with this Note. It is further unclear to the court how that amount would equitably compensate Sky Bank.

■ Finally, the court has relied on the fact that "bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). In this instance, the court finds that the five percent late charge calculated based on the entire amount of principal and interest due under the Note as of June 1, 2001 was overreaching and unreasonable. Absent clearly explicit language in the Note otherwise, such a charge cannot be assessed.

Because the court reads the Note to indicate a proper late charge of five percent on the monthly payment that was overdue as of June 1, 2001, the court must still determine the proper amount of that charge. The court notes that neither of Sky Bank's two claims relating to the Note provide a claim breakdown so that the court may determine the proper amount of the last payment. Nor does there appear to be any evidence in the record of how much was due for payment on June 1, 2001.

It is equitable, however, to utilize the monthly payment stated on the face of the

Note, which is $18,883.63 to determine the amount of the late charge allowed for the June 1, 2001 payment. Given the amount of Sky Bank's claim, any fluctuations in percentage rate which would have most certainly decreased the monthly payment between the date of the Note and June 1, 2001, will have a de minimus effect in the allowed late charge. Thus, taking five percent of the monthly payment of $18,883.63 yields an appropriate late charge of $944.18 for the final payment due on June 1, 2001. Adding to that the amount of late fees assessed prior to June 1, 2001, which was $7,091.33 as identified in Sky Bank's Exhibit 1 presented at oral argument, the total amount of allowable late charges in the Sky Bank claim is $8,035.51. The allowed amount of the late charge portion of Sky Bank's claim will be reduced to that amount.

## II. Attorney Fees

The Debtors objections to Sky Bank's Memorandum of Attorney Fees focus on several aspects of the Memorandum. Essentially the Debtors object to Sky Bank's allegedly duplicative services, some expenses, and other minor errors or omissions in the Memorandum. Sky Bank's reply to the Debtors objection, filed on December 5, 2003, clarified most, if not all, of the minor objections, and attempted to explain some of the expenses and the duplicative nature of the services provided.

■ Payment of legal fees to an over secured creditor is proper where fees are "expressly provided in the security agreement and where the fees are reasonable." See In re Brunswick Apartments of Trumbull County, Ltd., 215 B.R. at 524 (citing Manufacturers National Bank v. Auto Specialties Mfg. Co., 18 F.3d 358, 360 (6th Cir.1994)). In this case, section 7(E) of the Note allows for attorney fees. Thus, the only issue is whether Sky Bank's fees are reasonable.

As noted above, the Debtors objected to Sky Bank's attorneys fees on several different grounds. Sky Bank has, in return, replied to those objections. The court will address each set of objections as provided in the Debtors' response.

The Debtors initially objected to several issues involving the personal fee summary provided by Sky Bank. This summary provides the name of each person who performed services for Sky Bank, their corresponding billing rate, and the amount of time each person spent working on this bankruptcy. The Debtors object to the failure of the personal fee summary to explain changes in the hourly rates of various personnel and the failure of Sky Bank to include a statement as to whether or not the compensation requested is based on customary compensation charged by comparable skilled practitioners in cases other than cases under Title 11 as required by the United States Trustee. Sky Bank addressed that objection in its reply and the court finds that explanation acceptable. The changes in the hourly rates were due to the normal annual increase of hourly rates of Sky Bank's counsel and the rates charged are comparable to those of other skilled practitioners in cases other than in cases under Title 11.

The Debtors next object to an obvious typographical error in Sky Bank's Memorandum regarding one of its attorneys annual rate. The court notes that Sky Bank has corrected that error in its reply. Sky Bank has also explained the identity of A.M. Batts in its reply.

■ The Debtors object to the $5,000 in fees for Sky Bank's in-house counsel arguing that there is no explanation for the fees and that those fees were extinguished under the merger doctrine once the Spencer Motel was sold at foreclosure. Sky Bank has addressed these issues and cited case law opposing the portion of

Debtors' objection that was based on the merger doctrine. The court, however, expressly does not rule on whether the fees were extinguished in the foreclosure under the merger doctrine. Instead the court finds that the fees incurred by Sky Bank's in house counsel are not allowable or reasonable because Sky Bank incurred no actual "out of pocket" expenses for the costs. *See In re Brunswick Apartments of Trumbull County, Ltd.,* 215 B.R. at 525. Accordingly, that portion of Sky Bank's fees will be deemed disallowed.

The Debtors object to some of the expenses set forth by Sky Bank in Exhibit B to the Memorandum. Again, Sky Bank has provided acceptable explanations for many of these expenses on which the court looks favorably. The court finds that the use of UPS delivery services, the automobile mileage charges, and the Lexis charges are all reasonable costs under section 506(b). The court, however, is troubled by the lack of response to the objections to the $7.50 meal charges and the $52.00 in facsimile charges attributed to a hotel in Chicago. Without further explanation, which was not presented at oral argument, the court finds that these charges are not reasonable and are, therefore, disallowed. Sky Bank's allowed expenses will accordingly be decreased by $59.50.

The Debtors next object to the various billing statements. The Debtors specifically object to the amount of time spent preparing Sky Bank's claim in the bankruptcy. While the court recognizes the Debtors concerns, it is also aware that preparation of a proof of claim constitutes a complete review of the documents involved as well as discussions between the counsel and client regarding the amount of the claim. The court finds these charges to be reasonable under the circumstances.

The Debtors remaining objections are based on the fact that Sky Bank's attorneys provided duplicative services while aggressively pursuing Sky Bank's interest in these bankruptcy proceedings. Those duplicative services come in two forms; either in the form of two attorneys attending one hearing or in various intra-office conferences in which the Sky Bank counsel discussed strategy and planning in pursuing Sky Bank's claims. While the court recognizes that Sky Bank's counsel did often send two attorneys for one hearing and spent some time discussing the case within their offices, the court finds all these charges to be reasonable under section 506(b). The court further notes that Sky Bank's explanation of these services in its reply memorandum was both helpful and well taken. It is clear from that explanation that Sky Bank's counsel expended a good amount of effort attempting to reduce the possibility of duplicative services by managing this bankruptcy with an appropriate segregation of work between litigation and bankruptcy specialists. The Debtors objections to these various duplicative services are not well taken and the claims will be allowed.

In summary, the court finds that all but $5,059.50 of the attorney fees and expenses requested by Sky Bank in its Memorandum of Attorney Fees are reasonable and allowable under the terms of the Note and under section 506(b) of the Bankruptcy Code. The allowed portion of Sky Bank's claim for attorney fees will be set at $53,292.00 and the allowed expenses will be set at $2,196.00, for a total allowed amount of fees and expenses of $55,488.00.

### CONCLUSION

The Debtors' Motion to Reconsider Issue of Late Fees is granted. Upon reconsideration, the court finds that the assessed late charges are unreasonable in accordance with 11 U.S.C. § 506(b) because the Note is ambiguous, fails to explicitly provide for late charges on the

entire balance of the Note after maturity, and such an assessment is inequitable under the circumstances. The late charges portion of Sky Bank's allowed claim is adjusted to the amount that would have been charged on the monthly installment payment due on June 1, 2001.

The court finds the attorney fees set forth in Sky Bank's Memorandum of Attorney Fees to be reasonable with the exception of the fees charged by Sky Bank's in-house counsel and the unexplained expenses as set forth above. The attorney fees and expenses portion of Sky Bank's claim is allowed in the amount of $55,488.00. Taking into account the above rulings and utilizing the calculation provided in the court's order issued on October 8, 2003, Sky Bank's allowed claim is now adjusted as follows:

| | |
|---|---|
| Principal | $ 624,512.08 |
| Interest | $ 261,159.73 |
| Late Fees | $ 8,035.51 |
| Costs | $ 84,440.46 |
| Atty Fees/Expenses | $ 55,488.00 |
| Total: | $1,033,635.78 |

It is so ordered.