**In re BRUNSWICK APARTMENTS OF TRUMBULL COUNTY, LTD., Debtor.**

**First Bank of Ohio, Appellant,**

**v.**

**Brunswick Apartments of Trumbull County, Ltd.; Cardinal Industries, Inc., Appellees.**

No. 98–3197.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 17, 1998.

Decided Feb. 25, 1999.

James A. Giles (argued and briefed), Giles & Williams, Mt. Vernon, Ohio, for First Bank of Ohio.

Douglas S. Roberts (argued and briefed), Clark, Perdue & Roberts, Columbus, OH, for Brunswick Apartments of Trumbull County, Ltd.

Carol G. Stebbins, Reynoldsberg, OH, for Cardinal Industries, Inc.

Before: MERRITT, NORRIS, and GILMAN, Circuit Judges.

MERRITT, Circuit Judge.

In this Chapter 11, single-asset, debtor-in-possession reorganization of a 59-unit apartment, the Bank, as the holder of the mortgage with a principal balance of approximately $1,250,000, sought to have the partnership which owns the apartment pay charges (in addition to default interest) of approximately $220,000 consisting of (1) a consultant's fee of $46,000; (2) a five per cent "service charge" of $62,000 on the remaining principal balance; (3) attorney's fees of $23,000; and (4) collection costs of $39,000. When the underlying promissory note matured on January 1, 1994, the debtor was unable to obtain immediate refinancing, and the parties were un-able to agree on a restructuring of the debt. The creditor's foreclosure action was stayed by the debtor's filing of the Chapter 11 petition. The question before us is whether the Bankruptcy Appellate Panel, referred to as the "BAP," erred in affirming the findings and conclusions of the Bankruptcy Court that most of the fees and charges are not "reasonable fees, costs or charges" under section 506(b) of the Bankruptcy Code.[1] This appeal is among the first cases coming to us from the BAP, a newly created three-judge appellate panel consisting of bankruptcy judges named under 28 U.S.C. § 158(b) and designed to replace the District Court with an expert panel of bankruptcy judges as the first line of appeal.

We need not consider the amount of interest or the post-petition interest rate to be charged under § 506(b). The parties stipulated to use the contract default interest rate of 8.625% pursuant to the rule in the Sixth Circuit establishing as the appropriate rate the "prevailing market rate of interest on similar types of secured loans at the time of allowance of the creditors' claim and the confirmation of the plan in bankruptcy with a *maximum limitation* on such rate to be the underlying contract rate of interest." *In Re Colegrove*, 771 F.2d 119, 123 (6th Cir.1985). Thus, instead of a market rate the debtor has agreed to the maximum default rate of interest permitted under the promissory note.

Likewise the Bank raises no issue on appeal under 11 U.S.C. § 1129 concerning discrimination among classes of creditors or the good faith of debtor in proposing its plan of reorganization, although these and many other objections were raised and litigated in the proceedings below. (See J.A. 687–93.)

■ 1. *Consultant's Fee.*—Neither the Bankruptcy Court nor the BAP erred in its finding that the $46,000 consultant's fee was an unreasonable charge against a debtor seeking bankruptcy protection in order to reorganize itself and pay off its creditors. Paragraph 7 of the promissory note allows

---

1. 11 U.S.C. § 506(b) provides as follows:
   To the extent that the allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

the creditor upon default to charge to the debtor "the expenses and costs [of collection], including reasonable attorneys fees." Section 506(b) limits such charges to "reasonable fees."

In rejecting this charge, the Bankruptcy Court found that the consultant was a bank insider, a director of the Bank and the father of the Bank's principal shareholder, who controls 90% of the stock. Although licensed as a lawyer, the director does not practice and has no experience in bankruptcy matters. The consultant's time records, according to the findings below, were "so incomplete and inadequate that no meaningful determination" of the hours spent or the services performed "could be made." In the foreclosure action and the bankruptcy proceedings, the Bank was represented by other lawyers.

As both Bankruptcy Judge Sellers and the BAP made clear, a secured creditor of a debtor in default may not take advantage of its position to unjustly enrich itself by charging a debtor with unreasonable insider fees, windfall profits, and similar fees. The courts below did not err in taking a skeptical view of the consultant arrangement in view of the insider nature of the transaction and the absence of a plausible basis for the charges in the record.

■ **2. *The 5% Service · Charge.*—The** courts below also held unreasonable the Bank's effort to convert a 5% "service charge" on "installments" in default into a 5% service charge on the entire unpaid balance of $1,250,000. Paragraph 6 of the promissory note provides for a 5% charge on unpaid "installments" "for each month such installment remains." Paragraph 1 of the note describes such "monthly installments" as payments of $12,807.95 "based on a 30–year amortization schedule" for 5 years, at which time "the balance of the principal . . . shall be due and payable." It is obvious that the note contemplates a service charge only on unpaid monthly installments. There is no ambiguity in the language of the note. The courts below observed that "standard commercial practice" imposes service charges for nonpayment of periodic installments, not on the principal balance owed at maturity. That holding is consistent with the case law developed under § 506(b) of the Bankruptcy Code, which applies the principle that a service charge based on percentage of the remaining balance is unreasonable when combined with default interest greater than the market rate of interest. *See In Re Consolidated Properties, Ltd. Partnership,* 152 B.R. 452 (Bkrtcy. D.Md.1993). In the instant case, the parties stipulated to a default rate of interest of 8.625%, a rate greater than the market rate and 2% greater than the contract rate of 6.625% established in the promissory note. We find no basis for overturning the decision below that the service charge does not apply to the matured principal balance.

■ **3. *Attorneys' Fees.*—In the instant** case, the debtor obtained from another lender during the pendency of the bankruptcy proceeding the necessary funds to refinance the Bank's secured claim including principal and default interest. This amount was placed in escrow. Instead of accepting the escrowed funds, the Bank insisted on a settlement that included the insider fees and the service charge on the remaining balance. The Bank then sought from the Bankruptcy Court attorneys fees in the amount of $73,-000 (not including amounts previously allowed), which included compensation for its efforts to enforce a secured claim more than $200,000 in excess of the amount found reasonable by the Bankruptcy Court. It also included an effort over many months to enforce in Bankruptcy Court a settlement agreement between the parties that was determined by the Court not to have been formed or agreed upon. The attorneys fee award of $11,551 by the Bankruptcy Court took into account the fact that most of the attorneys fees sought by the bank were based on time spent in making and litigating its unreasonable demands to enforce the alleged settlement agreement and for an excessive secured claim. The Bankruptcy Court reduced the Bank's claim for attorneys fees as a deterrent against unreasonable and excessive claims and unnecessary litigation by creditors against an estate entitled to protection in bankruptcy. We find no error in its decision.

■ **4. Fees of Salaried Employees.—** The Bankruptcy Court also rejected $39,000 in internal costs for the time spent by Bank employees in compiling information, conferring and asserting the bank's claims. On appeal the Bank has reduced its claims for reimbursement for internal employee salaries to $14,000. The BAP dealt with this request as follows:

> The testimony presented by the Bank failed to demonstrate actual costs and expenses beyond its normal operating costs attributable to the Debtor's loan. Alan Shind, CEO of the Bank, testified that he and employee Dan Hartman worked on the Debtor's loan, and were paid their "normal annual salary" with nothing additional, such as overtime or additional salary. (Transcript of Oct. 12, 1995 hearing pp. 167, 183; Appendix to br. of Appellant, Vol. I, pp. 139, 155.) Further, Shind testified that no log was kept concerning the hours that he and Hartman spent on the Debtor's loan. (Transcript of Oct. 12, 1995 hearing p. 145; Appendix to Br. of Appellant, Vol. I, p. 117) Under Section 506, the creditor must prove that such expenses are reasonable, actual and necessary. Herein, those standards were not met. The Bank could not demonstrate actual costs and expenses beyond its normal operating costs attributable to the Debtor's loan.

On appeal, the Bank cites no authority which supports charging the debtor with regular employee salaries that would have been paid in the same amount in the absence of this controversy. In the ordinary course of business, lenders maintain and generate financial records, hold discussions among employees and discuss problems and ways to increase profits with accountants, lawyers and others. Section 506(b) does not contemplate reimbursement for such ordinary business expenses that would have been incurred anyway. In rejecting these and similar demands by the Bank, the Bankruptcy Court spoke of the obvious disapproval and "disdain" for the Chapter 11 process that the

Bank exhibited throughout the proceedings [2]. Our review of the record does not disclose a basis for rejecting this view. The Bankruptcy Court concluded that a due regard for and understanding of the purposes of Chapter 11 proceedings would have ended this protracted litigation long ago and that the secured creditor should not be rewarded but should be deterred from multiplying the proceedings unnecessarily. This view of the Bank's conduct in pursuing unreasonable claims no doubt colored the proceedings in the courts below. But we do not find that the courts below have erred in the principles of law applied, nor do we find that any findings of fact by the Bankruptcy Court are clearly erroneous. Accordingly, we affirm the judgment of the Bankruptcy Appellate Panel affirming the judgment of the Bankruptcy Court. The costs on appeal shall be borne by appellant.

---

**2.** The Bankruptcy Court stated:

> It is unfortunate that First Bank does not approve of the chapter 11 process and does not choose to become familiar with its legitimate effects upon secured lenders. Such disdain

and unfamiliarity appropriately will cause First Bank to incur certain legal fees and expenses it cannot pass on to the Debtor under its Note.

J.A. 787 (Order of January 25, 1996).